# UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 16, 2009

Charles R. Fulbruge III
Clerk

No. 07-51118

IN THE MATTER OF: DAVID WILSON MORRISON

Debtor

-----------------------------------------------------------------------------

DAVID WILSON MORRISON

Appellant

v.

WESTERN BUILDERS OF AMARILLO INC.

Appellee

Appeal from the United States District Court
for the Western District of Texas

Before JONES, Chief Judge, and GARWOOD and SMITH, Circuit Judges.

EDITH H. JONES, Chief Judge:

David Wilson Morrison ("Morrison") appeals the bankruptcy court's decision, affirmed by the district court, holding him personally liable for a $549,773.63 nondischargeable debt pursuant to 11 U.S.C. § 523 (a)(2)(B). We hold that the bankruptcy court had jurisdiction to enter a monetary judgment

against Morrison, and we reject his challenges to the nondischargeability conclusion of the court.  The judgment is AFFIRMED.

## I.  BACKGROUND

Morrison was the president and principal shareholder of Morrison Excavation, Inc.  On February 6, 2002, Morrison was informed by Larry Fuller, his long-time business adviser and CPA, that his company was in serious financial trouble.[1]  On February 14, Morrison Excavation submitted a bid for a subcontract with Western Builders.  On February 15, Shelly Dexter, the bookkeeper for Morrison Excavation, found an accounting error that overstated the company's accounts receivable by approximately $857,000, which meant that Morrison Excavation was no longer solvent.  On February 22, Western Builders, after reviewing Morrison Excavation's work at several sites and doing a credit reference check, requested a copy of Morrison Excavation's financial statement. The same day, Morrison faxed a copy of a financial statement that still reflected the inflated accounts receivable error to Western Builders.  On March 6, Morrison Excavation and Western Builders entered into a contract.

---

[1]     Fuller described the business as "cash broke, way behind to vendors, collecting money before job completed and no money to pay bills from completed jobs, and vendors filing liens" in the notes he prepared for a meeting with Morrison on February 6, 2002.

Starting on March 28, 2002, Western Builders began making advance payments at the request of Morrison Excavation in order to allow Morrison to pay subcontractors and suppliers. Morrison Excavation, however, used some of the money to pay materialmens lienholders despite having certified to Western Builders that prior payments to lien claimants and suppliers had been made. During this time, Morrison also paid off his personal home equity loan from the company account and gave himself a substantial raise. By mid-August, Morrison Excavation abandoned the job. Western Builders paid the outstanding liens and hired a new excavation company to finish the project for more than a half million dollars over the original contract price.

On March 13, 2004, Morrison filed an individual Chapter 7 bankruptcy case. Western Builders commenced an adversary proceeding to determine the nondischargeability of the debt owed to it pursuant to 11 U.S.C. § 523(a)(2)(B). At the trial of the nondischargeability claim, Morrison testified that he did not learn about the accounting error until March 23 or 24, 2002. Dexter said that she told Morrison "around February 15," but she could not pinpoint an exact date or month. Another employee, Jackie Davenport, testified that Morrison was told "at or about the same time that the error was discovered." This information, at least in part, came from a conversation she overheard between

Morrison and Dexter. Morrison objected to Davenport's testimony as hearsay. The bankruptcy court held that the testimony of Davenport was an admission under FED. R. EVID. 801(d)(2)(D) as a statement by an agent or servant concerning matters within the scope of his agency or employment. The court found that her testimony "strongly suggest[ed] that Morrison most likely knew by February 22, 2002, that the financial statement contained an error–but perhaps did not know the magnitude of the error."

In a thorough and comprehensive opinion, the bankruptcy court held that the subcontract for services created a debt that could be found nondischargeable under 11 U.S.C. § 523(a)(2)(B) because Morrison could be held liable for the misrepresentation that benefited Morrison Excavation. The court concluded that Morrison personally committed common law fraud in order to obtain the subcontract. Thus, Morrison was personally liable for the debt either under Texas common law, which holds a corporate agent liable for his misrepresentations made on behalf of the corporation, or under TEX. BUS. CORP. ACT, art. 2.21(A)(2) (Vernon 2006), which authorizes "veil-piercing" shareholder liability.[2]

---

[2] Because we agree that Morrison committed fraud in delivering the false financial statement to Western Builders, we do not address the bankruptcy court's alternative ground of liability under the Texas Business Corporations Act.

4

The bankruptcy court rendered judgment for the entire debt due to Western Builders and declared the debt nondischargeable under 11 U.S.C. § 523 (a)(2)(B). On appeal, the district court affirmed. We affirm the judgment of the district court.

## II. DISCUSSION

### A. Jurisdiction

Before reaching the substantive questions Morrison raises, this court must determine sua sponte the legal issue whether the bankruptcy court had the power to render a money judgment for the nondischargeable debt. See Bass v. Denney (In re Bass), 171 F.3d 1016, 1022 (5th Cir. 1999). We received supplemental briefing from the parties after identifying this issue, which has not previously been decided by this court.

"The jurisdiction of the bankruptcy courts, like that of other federal courts, is grounded in, and limited by, statute." Celotex Corp. v. Edwards, 514 U.S. 300, 307 (1995). Pursuant to 28 U.S.C. § 1334, the district court has exclusive jurisdiction of all bankruptcy cases under title 11 and "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). See also 28 U.S.C. § 157(b) (authorizing district courts to refer "core" and "related-to" proceedings to

bankruptcy courts for adjudication). Western Builders' claim for a declaration of nondischargeability is a core proceeding under 28 U.S.C. §157 and "is, without question, a constitutional and statutory federal question claim 'arising under' the Bankruptcy Code, because the bankruptcy discharge is relief established by federal bankruptcy law and Section 523 expressly authorizes such a declaration regarding the effect of the federal bankruptcy discharge." Ralph Brubaker, On the Nature of Federal Bankruptcy Jurisdiction: A General Statutory and Constitutional Theory, 41 WM. & MARY L. REV. 743, 911 (2000).

The bankruptcy court here, however, went beyond a mere declaration to award judgment against David Morrison individually in the amount of $549,773.63 plus interest. See Western Builders of Amarillo, Inc. v. Morrison (In re Morrison), 361 B.R. 107, 128 (Bankr. W.D. Tex. 2007). Thus, the question presented is whether a bankruptcy court, in addition to declaring a debt non-dischargeable, has jurisdiction to liquidate the debt and enter a monetary judgement against the debtor. Several of our sister circuits that have considered this question found that the bankruptcy courts have the power to enter judgment in exactly this manner. See Cowen v. Kennedy (In re Kennedy), 108 F.3d 1015, 1017-18 (9th Cir. 1997); Longo v. McLaren (In re McLaren), 3 F.3d 958, 965-66 (6th Cir. 1993); Abramowitz v. Palmer, 999 F.2d 1274,

1278-79 (8th Cir. 1993); N.I.S. Corp. v. Hallahan (In re Hallahan), 936 F.2d 1496, 1508 (7th Cir. 1991); cf. Porges v. Gruntal & Co. (In re Porges), 44 F.3d 159, 163-65 & n.7 (2d Cir. 1995). Their reasoning, while pragmatic, stands in tension with the predominant theory of bankruptcy court jurisdiction. Nevertheless, while acknowledging the tension, we too conclude that jurisdiction existed to issue, if not necessarily later to enforce, the personal judgment against Morrison.

As noted, bankruptcy courts exercise jurisdiction, through referral from the district courts, of two types of cases. "Core" proceedings are those that "invoke[ ] a substantive right provided by title 11" or "could arise only in the context of a bankruptcy case." Wood v. Wood (In re Wood), 825 F.2d 90, 97 (5th Cir. 1987). Cases "related to" the bankruptcy case are those whose outcome could have any conceivable effect on the estate being administered in bankruptcy. Id. at 93 (citing Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3rd Cir. 1984)). The bankruptcy court's "related-to" jurisdiction is not limitless. Celotex, 514 U.S. at 308. Although determining that a debt is nondischargeable is plainly a "core" proceeding governed by a specific provision of the Bankruptcy Code, the rendition of a monetary judgment in favor of the creditor on that debt is not itself a core proceeding and, further, is not clearly related to the

bankruptcy case or administration of the debtor's estate. Indeed, that portion of the judgment has, in the usual case, no bearing on the bankruptcy case because it requires the debtor to pay a single debt outside of, apart from, and even after the completion of bankruptcy, and it frees the creditor thereafter from limiting its collection efforts to those afforded by the bankruptcy system. Commentators have noted the inconsistency inherent in a conclusion that rendering a money judgment for a debt found to be nondischargeable falls within the bankruptcy court's "related-to" jurisdiction. See Ralph Brubaker, supra, at 912-920 (2000).

Circuit courts that have approved the entry of money judgments by bankruptcy courts in nondischargeability cases have paid little attention to the jurisdictional dichotomy of core and related-to jurisdiction and have instead relied principally on tradition and pragmatism. "Traditionally," under Section 17(c)(3) of the 1898 Bankruptcy Act, bankruptcy courts were empowered to enter such money judgments. See 11 U.S.C. § 35(c)(3) (repealed 1978). The Bankruptcy Code did not specifically codify this authority upon its enactment in 1978, but, as one court noted, the Code authorized bankruptcy courts generally to hear all core proceedings, including nondischargeability complaints, and to "enter appropriate orders and judgments." 28 U.S.C. § 157(b)(1), (2)(I); In re

Kennedy, 108 F.3d at 1017. It is not unreasonable to conclude that Congress, which intended bankruptcy courts to exercise far more expansive jurisdiction under the Code than under previous law, could not have intended to cut back on their ability to enter money judgments in the core proceedings encompassed by non-dischargeability complaints.

The pragmatic reasoning adopted by most circuit courts is hard to contradict. Logically, the litigation necessary to prove nondischargeability also proves the basis for and amount of the debt. There would be no judicial efficiency in requiring the beneficiary of a nondischargeability judgment to pursue a separate lawsuit in state or federal court in order to secure a money judgment against the debtor.[3] Moreover, entry of judgment for the debt is proper because the court actually determined "the existence and validity of the debt" in a core proceeding. In re McLaren, 990 F.2d 850 at 854.

Because the arguments of tradition and pragmatism make sense, and because no Fifth Circuit law holds to the contrary,[4] we opt to follow the

---

[3] In some cases a creditor will have already obtained a judgment pre-bankruptcy, which serves as the basis for the nondischargeability claim. This discussion concerns nondischargeability claims made without preexisting judgments.

[4] In Bass v. Denney (In re Bass), 171 F.3d 1016 (5th Cir. 1999), this court held that a bankruptcy court lacks jurisdiction to adjudicate a suit brought to enforce a money judgment rendered by another bankruptcy court in connection with a nondischargeability proceeding. Bass, however, was an entirely separate suit from the proceeding that resulted in the money judgment. See generally, Alan M. Ahart, Enforcing Nondischargeable Money Judgments:

overwhelming authority and agree that the bankruptcy court had jurisdiction to enter judgment against Morrison for the debt owed to Western Builders after it found the debt nondischargeable.

B.

Having established that the bankruptcy court had the jurisdiction to render judgment for dischargeability and for the amount Morrison owed to Western Builders, we may reach the merits of Morrison's appeal. We review the decision of the district court by applying the same standard to the bankruptcy court's findings of fact and conclusions of law that the district court applied. A bankruptcy court's findings of fact are subject to review for clear error, and its conclusions of law are reviewed de novo. Gen. Elec. Capital Corp. v. Acosta (In re Acosta), 406 F.3d 367, 372 (5th Cir. 2005). "Under a clear error standard, this court will reverse 'only if, on the entire evidence, we are left with the definite and firm conviction that a mistake has been made.'" Otto Candies, L.L.C. v.

The Bankruptcy Courts' Dubious Jurisdiction, 74 AM. BANKR. L.J. 115, 120-21 (2000).

This court has also rejected supplemental jurisdiction for bankruptcy courts, see Walker v. Cadle Co (In re Walker), 51 F.3d 562, 569 (5th Cir. 1995), a theory employed by at least one court that sustained bankruptcy court jurisdiction in the instant context. N.I.S. Corp. v. Hallahan (In re Hallahan), supra. Walker, however, involved the question of supplemental jurisdiction over a third-party claim, rather than what is considered here, the jurisdiction to enter complete relief between two parties on a claim.

Nippon Kaiji Kyokai Corp., 346 F.3d 530, 533 (5th Cir. 2003) (quoting Walker v. Cadle Co. (In re Walker), 51 F.3d 562, 565 (5th Cir. 1995)).

First, Morrison asserts that Western Builders did not plead a cause of action to establish the debt. Only after trial, Morrison asserted in a post-trial brief that Western Builders' pleadings were insufficient. The bankruptcy court determined in its memorandum opinion that common law fraud was sufficiently pled and that any relevant issues not squarely presented in the original pleadings were tried by consent. While a party must place an opposing party on notice of a claim, see BANKR. R. 7008, incorporating FED.R.CIV.P. 8, an issue not pled may also be tried by consent. BANKR. R.7015, incorporating FED.R.CIV.P. 15(b);[5] see Schlotzsky's, Ltd. v. Sterling Purchasing & Nat'l Distrib. Co., 520 F.3d 393, 403 (5th Cir. 2008).

As noted, Morrison did not object before or during trial to the testimony of witnesses regarding his personal liability or to the court's request for amended pleadings to reflect a claim for judgment against him under state law. Morrison filed several motions acknowledging that Western Builders was seeking a

---

[5] When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings. A party may move--at any time, even after judgment--to amend the pleadings to conform them to the evidence and to raise an unpleaded issue. But failure to amend does not affect the result of the trial of that issue. FED. R. CIV. P. 15(b).

judgment for damages. In addition, Morrison did not object to the court's order allowing an amendment of pleadings to conform to the evidence pursuant to Bankruptcy Rule 7015(b), which specifically articulated the request for damages by Western Builders. Under these circumstances, the bankruptcy court correctly found that Morrison had adequate notice and the issues of his liability under state law and damages were tried by the parties' consent.

Second, Morrison asserts that Western Builders did not present sufficient evidence to support Morrison's personal liability for the debts of Morrison Excavation. On the contrary, Texas courts have routinely found that "a corporate officer may not escape liability where he had direct, personal participation in the wrongdoing, as to be the 'guiding spirit behind the wrongful conduct or the central figure in the challenged corporate activity.'" Ennis v. Loiseau, 164 S.W.3d 698, 707-708 (Tex. App.—Austin [3rd Dist.] 2005) (quoting Mozingo v. Correct Mfg. Corp., 752 F.2d 168, 174 (5th Cir. 1985)). In this case, Morrison, as a corporate agent, may be held "individually liable for fraudulent or tortious acts committed while in the service of [his] corporation." Shapolsky v. Brewton, 56 S.W.3d 120, 133 (Tex. App.—Houston [14th Dist.] 2001, pet. denied), disapproved on other grounds, Michiana Easy Livin' Country, Inc. v. Holten, 168 S.W.3d 777, 789 (Tex. 2005).

Morrison relies heavily on but quotes selectively from Holloway v. Skinner, 898 S.W.2d 793 (Tex. 1995), in support of his argument. Morrison also argues that the bankruptcy court erred by relying on Weitzel v. Barnes, 691 S.W.2d 598 (Tex. 1985), instead of the more recently decided Holloway.

In Holloway, the corporation failed to make payments due under a promissory note, and the creditor sued a corporate officer who owned 40 percent of the company for tortious interference with a contract. The court found that the corporation's severe cash flow problems and insolvency, not the actions of the corporate officer, caused the failure to keep up with payments. The corporate officer also reduced his salary and testified that "he was required to prioritize between competing claims because the corporation had insufficient cash flow to meet all obligations when they came due." Holloway, 898 S.W.2d at 798. In contrast, no matter what financial problems Morrison Excavation had, they did not excuse Morrison's decision to send the fraudulent financial statement to Western Builders. Morrison also doubled his own salary after he learned of the error in the statement.

Weitzel confirms, in the context of the TEXAS DECEPTIVE TRADE PRACTICES ACT, that "there can be individual liability on the part of a corporate agent for misrepresentations made by him." Weitzel, 691 S.W.2d at 601. Similarly, the

court in Miller v. Keyser, 90 S.W.3d 712 (Tex. 2002), decided that "an agent for a disclosed principal may be held liable for passing along false representations made in the course and scope of his employment." Id. at 714. Morrison does not attempt to distinguish Weitzel or Miller from his own situation, nor does he explain why the facts in Holloway are at all analogous.

The bankruptcy court found that Morrison personally committed fraud when he sent the financial statement on February 22, 2002. Morrison is, therefore, personally liable for the damages.

Third, Morrison contends that the subcontract between Morrison Excavation and Western Builders cannot result in a nondischargeable debt. In order to be non-dischargeable under § 523(a)(2), a debt must be for "money, property, services, or an extension, renewal, or refinancing of credit," and subsection (B) specifies nondischargeability of such debts to the extent they were obtained by materially false financial statements. 11 U.S.C. § 523(a)(2)(B). Morrison argues that Morrison Excavation did not obtain services but entered into a contract to provide services. The plain language of §523(a)(2) does not require that the transaction be in any particular form. Rather, the purpose of §523(a)(2) is to govern transactions where "the debtor's fraud . . . result[ed] in a loss of property to the creditor." 4 COLLIER ON BANKRUPTCY P523.08 (15th ed.

14

rev. 2004). The contract with Western Builders enabled Morrison to secure periodic payments—until his company defaulted. As Morrison stated, these came as a result of and through the contract. It is conceivable, as Morrison asserts, that fraudulently obtaining a contract by or on behalf of the debtor to perform services might not furnish the basis for a nondischargeability claim under § 523(a)(2)(B) if, for instance, the ultimate contract breach was caused by some event other than the insolvency of the debtor or his company. That is not the case here. Morrison Excavation was insolvent before it began to perform the Western Builders project, and it misapplied progress payments while certifying that suppliers and lien claimants on the project were being paid. The parlous financial condition of Morrison Excavation, which would have been fully revealed in an accurate pre-contract financial statement, was directly connected to the ultimate contract default.

Fourth, Morrison contends that Western Builders did not establish the requisite intent to deceive under §523(a)(2)(B)(iv) when Morrison sent the materially false financial statement. The bankruptcy court's determination of intent to deceive is a finding of fact subject to the clearly erroneous standard of review. Under §523(a)(2)(B), this Court has held that "intent to deceive may be inferred from use of a false financial statement." In re Young, 995 F.2d 547, 549

15

(5th Cir. 1993).[6] A judge may look at the totality of the circumstances and infer an intent to deceive when "[r]eckless disregard for the truth or falsity of a statement combined with the sheer magnitude of the resultant misrepresentation may combine" to produce such an inference. Norris v. First Nat'l Bank (In re Norris), 70 F.3d 27, 31 n.12 (5th Cir. 1995) (quoting In re Miller, 39 F.3d 301, 305 (11th Cir. 1994)). The bankruptcy court found that "the totality of the facts taken together indicate that Morrison knew of the error on February 22." Because the record supports this finding, it supported a finding of intent to deceive Western Builders.[7]

Finally, Morrison objects to the admission of Davenport's statements as hearsay. Davenport, an employee of Morrison Excavation, testified that she "overheard Ms. Dexter tell Morrison about the error." She also testified that she knew that Dexter approached Morrison "several times" about the financial

---

[6] See also In re Towers, NO. 07-4039, 2008 U.S. Dist. LEXIS 18624 (E.D. La. Mar. 10, 2008) (finding that the debtor had exhibited the requisite intent to deceive when it delivered a financial report that overestimated the accounts receivable by $40,000 and where the debtor knew that its loan would not be refinanced if the statement was corrected).

[7] Morrison argues that the bankruptcy court erred when it found that Morrison "had a continuing duty to send Western Builders a corrected financial statement." Morrison also contests that he "has been held personally liable for a corporate obligation based in part on a 'duty of fair dealing' that has never been asserted that is not recognized in Texas law, and that was raised for the first time by the Bankruptcy court in its opinion handed down after trial." We do not endorse these findings of the bankruptcy court nor do we comment on the legal theories they support. The findings are irrelevant to upholding the judgment.

statement's being incorrect and asked whether Morrison wanted to send it to Western Builders. This court reviews evidentiary rulings for abuse of discretion.

FED. R. EVID. 801(c) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Testimony offered to prove that the party had knowledge or notice is not hearsay because "the value of the statement does not rest upon the declarant's credibility and, therefore, is not subject to attack as hearsay." Alexander v. Conveyors & Dumpers, Inc., 731 F.2d 1221, 1230 (5th Cir. 1984). Davenport's testimony was not offered to prove that the financial statement was incorrect, but that Morrison had knowledge that it was incorrect before he sent it to Western Builders. Thus, it is not hearsay. See Snyder v. Whittaker Corp., 839 F.2d 1085, 1090 (5th Cir. 1988) (holding that a statement does not fall under the hearsay rule if it was offered to prove that certain statements were made to defendant corporation).

## III. CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.