IN THE SUPREME COURT OF TEXAS









IN THE SUPREME COURT OF TEXAS

 

════════════

No. 07-0410

════════════

 

Employees Retirement System of
Texas, Petitioner,

 

v.

 

Xavier Duenez and Irene
Duenez, Respondents

 

════════════════════════════════════════════════════

On Petition for Review from
the

Court of Appeals for the
Thirteenth District of Texas

════════════════════════════════════════════════════

 

 

Justice Wainwright, joined by Justice Johnson, dissenting.

            

            A
drunk driver injured the Duenezes in an automobile accident. The Employees
Retirement System of Texas (ERS) benefits plan paid approximately $400,000 in
medical benefits to the family. ERS then sought to recover the benefits it paid
to the Duenezes after they recovered $35 million from the tortfeasor who caused
the injuries. ERS’s right to seek reimbursement of the medical benefits paid
arises by virtue of contractual subrogation rights in the benefits plan. The
question in this case is a narrow one: Is the Duenezes’ dispute of ERS’s
subrogation claim subject to the exclusive statutory jurisdiction of ERS to
determine whether to pay “claims” under the plan and to decide issues “relating
to” the payment of claims? I would hold that the statute and benefits plan vest
ERS with exclusive jurisdiction over this dispute. Because the Court does not,
I respectfully dissent. 

I. Factual and Procedural Background

            Xavier
Duenez, a state employee, applied for benefits under ERS’s HealthSelect of
Texas Managed Care Plan (the Plan) for injuries he and his family sustained in
an automobile accident with a drunk driver. As administrator of the Plan, Blue
Cross Blue Shield of Texas (BCBS) certified that the requested care was covered
and began paying benefits.1 BCBS ultimately paid the Duenezes approximately
$400,000 in benefits before the Duenezes changed insurers.

            While
BCBS was paying benefits to the Duenezes under the Plan, the Duenezes sued to
recover damages for the injuries sustained in the accident and obtained a $35
million settlement from the tortfeasor.2 The executive director of ERS sent the
Duenezes’ attorney a letter asserting a right to recoupment of approximately
$400,000—$300,000 for subrogation claimed and a little over $100,000 for
overpayment of medical benefits. It appears from the record that the
approximately $100,000 in improperly paid benefits at issue here was also the
subject of Duenez I, in which we held that ERS has exclusive
jurisdiction over coverage decisions. 201 S.W.3d at 676. Upon learning of the
settlement, BCBS sued under both subrogation and overpayment theories to recoup
the $400,000 it paid to the Duenezes in benefits under the Plan and for
declaratory judgment. BCBS’s subrogation rights in this case arise from a
provision in article IX of the Plan, which entitles the Plan to reimbursement
from the proceeds of a settlement for any benefits provided by the Plan.

            BCBS
joined ERS as a co-defendant in the lawsuit. See Tex. R. Civ. P. 39(a) (permitting joinder of a party
necessary for the just adjudication of the lawsuit). ERS moved to dismiss the
suit for want of jurisdiction, arguing it has exclusive jurisdiction over this
subrogation dispute.3 The trial court denied ERS’s motion, and
the court of appeals affirmed. 221 S.W.3d 809, 815.

II.
Employees Retirement System’s Exclusive Jurisdiction

            When
the Legislature creates an administrative right that did not exist at common
law, it can prescribe the procedures for pursuing and enforcing the right. Igal
v. Brightstar Info. Tech. Group, Inc., 250 S.W.3d 78, 92 (Tex. 2008). The
Legislature may confer exclusive jurisdiction on an administrative body to hear
and decide disputes concerning the right created.4
Subaru of Am. v. David McDavid Nissan, Inc., 84 S.W.3d 212, 221
(Tex. 2002). When it does, a party must exhaust its administrative remedies
before seeking review in a trial court. Duenez I, 201 S.W.3d at 675.
Until a party exhausts its administrative remedies, Texas trial courts lack
jurisdiction over the dispute and must dismiss claims within the agency’s
exclusive jurisdiction. Id.; Thomas v. Long, 207 S.W.3d 334, 340
(Tex. 2006).

A.
Statutory Interpretation

            Whether
ERS has exclusive jurisdiction over this subrogation dispute is a matter of
statutory interpretation, which we review de novo. David McDavid Nissan,
84 S.W.3d at 221; Tex. Dep’t of Transp. v. Needham, 82 S.W.3d 314, 318
(Tex. 2002). The Texas Employees Group Benefits Act (the Act) gives ERS
exclusive jurisdiction over “all questions relating to enrollment in or payment
of a claim arising from . . . benefits provided” under the Plan. Tex. Ins. Code § 1551.352.5
Neither party disputes that ERS paid medical benefits to the Duenezes in
accordance with the Plan and has exclusive jurisdiction to determine the
benefits to be paid.

            The
Plan also contractually governs subrogation. It provides as follows:

 

a. This provision applies when another party (person
or organization) is or may be considered responsible for payment because of a
Participant’s injury or sickness for which benefits under the Plan have been
provided.

 

b. To the extent of such services provided, the Plan
is subrogated to all rights of recovery the Participant has[,] and the Plan may
assert such rights independent of the Participant. Also, if the Participant has
obtained or obtains a court judgment, settlement, arbitration, award, or other
monetary recovery from another party, because of the injury or sickness, the
Plan is entitled to reimbursement from the proceeds of recovery to the extent
of benefits provided.

 

The Plan expressly provides ERS with
a right to subrogation from the Duenezes’ recovery obtained from a tortfeasor,
whether through settlement or otherwise.

            By
disputing ERS’s plea to the jurisdiction, the Duenezes contest ERS’s
jurisdiction to decide the right to recover both portions of the benefits paid
through its subrogation rights. Their argument first depends on a holding that
ERS does not have exclusive jurisdiction over the dispute of the alleged
overpayment of $100,000 in medical benefits. This argument directly attacks
ERS’s decision to pay, or to decide not to pay, benefits under the Plan. The statute
is clear that ERS has exclusive jurisdiction over “all questions relating to
. . . payment of a claim.” See Duenez I, 201 S.W.3d at 676
(quoting Tex. Ins. Code §
1551.352). The Court agrees, but then determines that because the Duenezes are
no longer insureds of the Plan, ERS loses its ability to enforce its decision
regarding the payment of benefits. The Court’s holding allows easy
circumvention of ERS’s exclusive jurisdiction to decide the very issue of
payment of Plan benefits. Surely the Legislature did not intend that an insured
would be able to avoid its reimbursement obligation by simply changing insurers
before ERS can seek subrogation. The Court’s approach presents a simple roadmap
for former Plan participants to circumvent the statute and improperly move to
the courts claims to retain overpayments of medical benefits.

            The
Duenezes also argue that, because subrogation is collateral to payment and
coverage under the Plan, ERS’s assertion of exclusive jurisdiction to determine
whether it should be reimbursed the $300,000 in legitimate benefits paid
pursuant to its contractual subrogation rights is not related to payment of a
claim. See, e.g., Fortis Benefits v. Cantu, 234 S.W.3d 642, 644
(Tex. 2007) (involving a subrogation dispute in which coverage was not
disputed); Provident Life & Accident Ins. Co. v. Knott, 128 S.W.3d
211, 213 (Tex. 2003) (same).

            This point raises a question of the scope of the
legislative grant of exclusive authority. The statute’s grant of jurisdiction
over “all questions relating to . . . payment of a claim” is broader
than the Duenezes argue and the Court holds. In interpreting a statute, we
“give words their ordinary meaning.” Geters v. Eagle Ins. Co., 834
S.W.2d 49, 50 (Tex. 1992); see also In re Tex. Dep’t of Family & Protective
Servs., 210 S.W.3d 609, 612 (Tex. 2006). In this case, the ordinary meaning
comports with the accepted legal meaning, in that both definitions would only
require the matter to have some connection with payment. See Webster’s New Universal Unabridged Dictionary
1626 (1st ed. 1996) (defining “relate” as “to bring into or establish
association, connection, or relationship”); see also In re Morrison, 555
F.3d 473, 479 (5th Cir. 2009) (defining bankruptcy courts’ jurisdiction over
cases related to the bankruptcy estate). The Legislature granted ERS’s
executive director exclusive authority to determine questions that have a
connection or relationship to payment of a claim for benefits under the Plan—a
definition that clearly extends beyond merely determining the actual payment of
a claim. See § 1551.352.

            We are mindful that the Legislature enacted a
comprehensive regulatory scheme to govern health insurance for state employees.
See Tex. Ins. Code §
1551.001, et seq. Its expressly stated purposes are both to improve the
state’s relations with its employees and to “provide uniformity in life,
accident, and health benefit coverages.” § 1551.002. The statute grants
the Board of Trustees broad powers to “implement this chapter and its
purposes.” § 1551.052. Because this case relates to the recoupment of
benefits paid under the Plan, I believe it falls within the broad scheme
created by the Legislature to “provide uniformity.”

            In addition, ERS asserts its claim for subrogation in
this case alongside a claim for overpayment of benefits, over which ERS would
clearly have jurisdiction as a “question relating to . . .
payment of a claim.” ERS will have to parse the benefits paid, first by
determining how much of the benefits were overpaid, which is clearly within ERS’s
jurisdiction, and then determining whether the Duenezes owe subrogation on the
remaining amount. When two claims are so intertwined, it would not only be
inefficient, but also against the Legislature’s goal of promoting uniformity,
to allow ERS to exercise its exclusive jurisdiction over part of the dispute
and the trial court to decide the remainder, perhaps changing or nullifying
ERS’s payment decisions. This is untenable. Courts have the authority to change
ERS’s decisions, but only on appeal from ERS’s final decision under a
substantial evidence scope of review. Tex.
Gov’t Code §§ 2001.171, .174.

            To interpret this provision as the Duenezes suggest would
nullify a portion of the statute. See In re Caballero, 272 S.W.3d 595,
600 (Tex. 2008); Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue, 271
S.W.3d 238, 256 (Tex. 2008). The statute grants exclusive authority to
determine “all questions relating to . . . payment of a claim arising
from . . . benefits provided under this chapter.” § 1551.352. This
statutory language encompasses more than the payment of benefits—it encompasses
payment of a claim arising from benefits provided.

            Subrogation relates to the payment of a claim. See
Mid-Continent Ins. Co. v. Liberty Mut. Ins. Co., 236 S.W.3d 765, 774 (Tex.
2007) (recognizing that subrogation depends on payment of a loss); Fortis
Benefits, 234 S.W.3d at 644; Argonaut Ins. Co. v. Baker, 87 S.W.3d
526, 530 (Tex. 2002) (recognizing that a statutory provision requiring
employees to reimburse insurance carriers for payments made to the employees is
a subrogation provision); Medina v. Herrera, 927 S.W.2d 597, 604 (Tex.
1996) (“Generally, an insurer paying a claim under a policy becomes equitably
subrogated to any cause of action the insured may have against a third party
responsible for the injury.”). Subrogation arises from and depends on payment
of a loss or debt and is limited to the amount of payments made by the subrogee
to the subrogor. Mid-Continent, 236 S.W.3d at 774; Argonaut, 87
S.W.3d at 530. In other words, subrogation determines who ultimately pays the
claim—ERS or the third party, such as the tortfeasor in this case. Whether the
payment comes from the Plan or a plan participant’s recovery should be ERS’s
initial decision to make.

            Because subrogation relates to payment of the Plan
participants’ claims, contractual subrogation claims under the Plan should fall
within ERS’s exclusive jurisdiction. Tex.
Ins. Code § 1551.352. The language of the statute governs. City
of Rockwell v. Hughes, 246 S.W.3d 621, 625 (Tex. 2008); Hogue, 271
S.W.3d at 256.

            The Court seems to suggest that BCBS and ERS colluded on
a plan to sue in court and then seek dismissal for lack of jurisdiction.
Nothing in the record suggests that ERS and BCBS had such a plan, and nothing
in the Plan or statute requires a lawsuit as a predicate to administrative
subrogation. Even if BCBS made a litigation misstep by bringing its claim in a
court of law and joining ERS as a defendant, BCBS’s misstep does not mean that
ERS demanded dismissal of “its own claim,” as the Court asserts. ___ S.W.3d
___. And such a misstep does not change the language of the statutes vesting
ERS with exclusive authority to adjudicate matters relating to payment of
claims or the language of the health care plan under which the Duenezes
received hundreds of thousands of dollars.

B. Exercise of Jurisdiction

            Even if a statute appears to grant an agency exclusive
jurisdiction over certain claims, such jurisdiction may be limited if the
agency lacks procedural mechanisms to resolve the claims and the agency is
unable to award monetary damages. Butnaru v. Ford Motor Co., 84 S.W.3d
198, 207–08 (Tex. 2002). This indicates that the Legislature did not intend to
grant exclusive jurisdiction over a certain type of claim. Id. Although
I believe the plain meaning of the ERS statute grants exclusive jurisdiction
quite broadly, the effect would be tempered by further analysis. For example,
we held in Butnaru that the Motor Vehicle Board’s exclusive jurisdiction
did not extend to claims for tortious interference and declaratory judgment due
to: (1) the Motor Vehicle Code’s failure “to establish any procedure
through which the Board may resolve [the claims],” and (2) “the Board’s
inability to award monetary damages.” Id. at 207–08.

            The jurisdiction of the Motor Vehicle Board at issue in Butnaru
extended to “Code-based claims,” such as the denial of an application for a
dealership. Id. at 207. The plaintiffs asserted a tort claim that would
have to be proven under the common law. Id. at 208. We held that,
because the types of claims asserted and the damages sought were so unlike the
types of cases the Board usually heard, nothing in the statutory scheme
suggested that the Legislature intended to replace common law remedies with
administrative remedies. Id. (citing Cash Am. Int’l Inc. v. Bennett,
35 S.W.3d 12, 18 (Tex. 2000)). Whether ERS has the capability to resolve the
types of claims asserted bears on the scope of the legislative grant of
jurisdiction.

            In this case, the Plan creates the subrogation claim
asserted by ERS, which arises from ERS’s payment of benefits to the Duenezes. See
Fortis Benefits, 234 S.W.3d at 647 (emphasizing that “the policy declares
the parties’ rights and obligations”). The Plan is within ERS’s particular
expertise. This contrasts with Butnaru, where two independent parties
unrelated to the agency sued in an agency proceeding based on substantive tort
law. On the other hand, probate, marital, and tax questions, which the Court
fears would also fall within ERS’s exclusive jurisdiction under our definition,
would be more similar to the situation in Butnaru. ERS has not attempted
to exercise exclusive jurisdiction over such collateral matters, but if it did,
it would be clear that the Legislature did not intend to extend exclusive
jurisdiction that far. See Butnaru, 84 S.W.3d at 208.

            It is true that ERS has not adopted substantive rules
specifically governing the resolution of administrative subrogation proceedings;
however, this appears to be the first such subrogation dispute a Plan
beneficiary has pursued through the courts. ERS presumably determines the
majority of subrogation claims through the administrative process without
dispute. Importantly, the enabling statute grants ERS the authority to adopt
rules “it considers necessary to implement this chapter and its purposes,”
including the rules governing subrogation proceedings. See § 1551.052.
The attorney general points out that the Legislature tied ERS’s exclusive
jurisdiction to “a pervasive regulatory scheme,” thus arguing that the lack of
an express provision for subrogation does not limit ERS’s jurisdiction. See
In re Entergy Corp., 142 S.W.3d 316, 321–22 (Tex. 2004). I agree.

            As the court of appeals and the Court note, the lack of
substantive guidance on subrogation disputes stands in contrast to other
matters within ERS’s exclusive jurisdiction, such as eligibility for benefits
and coverage, both covered by the Act. 221 S.W.3d at 815; §§ 1551.101–.159,
.202–.206. However, ERS’s subrogation rights are available only under the Plan,
not under the Act. The substantive right to subrogation and the obligation to
reimburse ERS are created by the Plan, and the agency and the Plan beneficiary
are both stakeholders in the dispute. In fact, no equitable defenses apply when
subrogation rights arise from a contract, as they do in this case. Fortis
Benefits, 234 S.W.3d at 647. Rather, “the policy declares the parties’
rights and obligations.” Id. Hence, the dispute is much different from
the one addressed in Butnaru. See 84 S.W.3d at 206.

            Further, unlike the Motor Vehicle Code at issue in Butnaru,
the Act provides a general framework for ERS to resolve contested subrogation
issues. The statute directs that the executive director make all determinations
over which he has jurisdiction, which, in this case, came in the form of a
letter to the Duenezes. § 1551.352. The participant then has the
opportunity to appeal the determination to the ERS Board of Trustees. § 1551.351(d).
Here, the Duenezes appealed to the Board of Trustees;6
however, the trial court abated the agency proceeding pending a determination
of its jurisdiction. Had the appeal proceeded, the Duenezes would have been entitled
to a contested case hearing by the ERS Board of Trustees with the opportunity
to present defenses. See Tex.
Ins. Code §§ 1551.351(d), .355(d); see also Tex. Gov’t Code §§ 2001.051–.103
(providing minimum standards of uniform procedure for administrative hearings
in contested cases). If still dissatisfied after the appeal, the Duenezes,
having exhausted all of their administrative remedies, would then be free to
file suit in a trial court in Travis County.7
See Tex. Ins. Code § 1551.359
(“A person aggrieved by a final decision of the Employees Retirement System of
Texas in a contested case . . . is entitled to judicial review of the
decision.”); Tex. Gov’t Code § 2001.171
(providing that a person who has exhausted all administrative remedies
available within an agency and is aggrieved by a final decision in a contested
case is entitled to judicial review); Cash. Am. Int’l, 35 S.W.3d at 15
(“When the Legislature vests exclusive jurisdiction in an agency, exhaustion of
administrative remedies is required.”).8 The procedures
through which ERS resolves other disputes based on the Plan are already in
place and can accommodate the subrogation dispute at issue here.

            Second, in Butnaru, the plaintiffs sought monetary
damages based on the common law claim of tortious interference and a
declaratory judgment for a breach of contract claim. 84 S.W.3d at 206. We held
that the agency’s inability to award monetary damages or a declaratory judgment
undermined the argument that its jurisdiction extended to those claims. Id.
at 206–07. Unlike the agency in Butnaru, ERS has the authority to obtain
reimbursement of funds, the damages sought here. See Tex. Ins. Code § 1551.351(a)–(b)
(allowing reimbursement of funds obtained through fraudulent or
quasi-fraudulent means). The remedies provided under the Act “are the exclusive
remedies available to an employee, participant, annuitant, or dependant.” Id.
§ 1551.014; see Unigard Sec. Ins. Co. v. Schaefer, 572 S.W.2d 303,
307 (Tex. 1974) (“When the Legislature specifies a particular extent of
insurance coverage, any attempt to void or narrow such coverage is improper and
ineffective.”). Conspicuously absent from that list of parties is ERS. ERS has
the authority to bring an action under the statute and then to enforce that
judgment in the trial court. See, e.g., Tex. Ins. Code § 1551.351(a); Tex. Gov’t Code § 2001.202. Therefore, ERS is not
limited exclusively to the remedies specifically provided in section 1551 and
has the authority to fashion appropriate procedures and remedies to be used in
subrogation disputes. Tex. Ins. Code
§§ 1551.014, .052.

            The Court relies on its assertion that ERS’s procedures
were never designed for collecting a claim. ___ S.W.3d ___. However, ERS must
have the procedures for recovering money already paid in benefits, because the
statute explicitly allows them to do so in another context.
§§ 1551.351(b)(3), (5) (quasi-fraudulent conduct). After receiving a final
judgment in the administrative proceeding, ERS would enforce its judgment in
the trial court in the same manner it would enforce the recovery of payments
made based on quasi-fraudulent conduct or any other administrative decision. See Tex. Gov’t Code § 2001.202
(stating that the attorney general may, at the request of ERS, represent its
interest in trial court to “compel compliance with the final order,” but that
representation by the attorney general “is in addition to any other remedy
provided by law”).

III. Conclusion

            For the reasons discussed above, I conclude that the
Legislature has granted ERS exclusive jurisdiction over this subrogation
dispute. In re Entergy Corp., 142 S.W.3d at 322. I would reverse the
court of appeals’ judgment and dismiss the case for want of jurisdiction. Tex. R. App. P. 59.1.

 

                                                                        ___________________________________

                                                                        Dale
Wainwright

                                                                        Justice

 

OPINION DELIVERED: July 3, 2009


























[1] After
initially certifying coverage, BCBS later informed the Duenezes that the care
was not covered and that BCBS planned to discontinue paying benefits. Blue
Cross Blue Shield of Tex. v. Duenez (Duenez I), 201 S.W.3d 674, 675
(Tex. 2006). The Duenezes pursued a declaratory judgment that the care was
covered. Id. We held that ERS has exclusive jurisdiction over coverage
decisions and dismissed the case for want of jurisdiction. Id. at 676.





[2] The
Duenezes sued the drunk driver and the owner of the convenience store that sold
the drunk driver alcohol on the day of the accident, obtaining a $35 million
jury verdict that the court of appeals affirmed. F.F.P. Operating Partners,
L.P. v. Duenez, 237 S.W.3d 680, 682–83 (Tex. 2007) (Duenez II).
While F.F.P.’s petition was pending before this Court, the Duenezes settled the
claims of Xavier, Irene, and Ashley Duenez. Id. We reversed and remanded
the remaining claims of Carlos and Pablo Duenez for a new trial, holding that
the trial court abused its discretion when it severed F.F.P.’s claims against
the drunk driver and when it refused to submit jury questions to allow the jury
to determine the drunk driver’s proportionate responsibility. Id. at
683, 694.





[3] In City
of Corpus Christi v. Public Utilities Commission, we held that an agency’s
interpretation of a statute is entitled to deference if: (1) it is reasonable,
and (2) it does not conflict with the statute’s plain language. 51 S.W.3d 231,
261 (Tex. 2001). In that case, although the Commission’s interpretation allowed
for over-collection of transition charges, we held that the Commission did not
err. Id.; see also State v. Pub. Utils. Comm’n, 883 S.W.2d 190,
196 (Tex. 1994) (holding, in a case about the PUC’s authority to provide a
remedy that the Legislature did not specifically include, that “the
contemporaneous construction of a statute by the administrative agency charged
with its enforcement is entitled to great weight”).





[4] Texas
trial courts have “exclusive, appellate, and original jurisdiction of all
actions, proceedings, and remedies, except in cases where exclusive, appellate,
or original jurisdiction may be conferred by this Constitution or other law on
some other court, tribunal, or administrative body.” Tex. Const. art. V, § 8.





[5] When
this case arose, the Act was codified at article 3.50-2 of the Texas Insurance
Code. The Act was later repealed and recodified with non-substantive revisions.
See Act of May 22, 2001, 77th Leg., R.S., ch. 1419, §§ 3, 31(b)(6), 2001
Tex. Gen. Laws 4153, 4209 (current version at Tex.
Ins. Code § 1551). Citations are to the current version of the Act.





[6] If the
participant failed to file a timely appeal, his or her administrative remedies
would similarly be exhausted. Just as an appeal to the Board of Trustees would
qualify as a contested case, so too would the decision of a participant not to
appeal. See Tex. Gov’t Code § 2001.003(1)
(“‘Contested case’ means a proceeding . . . in which the legal
rights, duties, or privileges of a party are to be determined by a state agency
after an opportunity for adjudicative hearing.” (emphasis
added)); see 25 William V.
Dorsaneo III, Texas Litigation
Guide § 423.02 (2007). If the participant failed to appeal the
determination of the executive director of ERS, such determination must
necessarily represent the final determination of the administrative agency. See
§ 2001.144. At that point, ERS would be able to enforce its judgment
in the trial court. See § 2001.202
(stating that the attorney general may, at the request of ERS, represent its
interest in a trial court to “compel compliance with the final order,” but that
representation by the attorney general “is in addition to any other remedy
provided by law”).





[7] If the
Board of Trustees finds in favor of the participant, ERS could request that the
attorney general bring an action in trial court on its behalf. See Tex. Gov’t Code § 2001.202.





[8] Clearly,
then, filing suit is not a prerequisite to exhausting administrative remedies,
as the Court suggests. ___ S.W.3d ___. Suit would be filed only after the
administrative process has concluded, either by the Duenezes, unhappy with the
result, or by ERS, to enforce the decision of the administrative body.















[1] After
initially certifying coverage, BCBS later informed the Duenezes that the care
was not covered and that BCBS planned to discontinue paying benefits. Blue
Cross Blue Shield of Tex. v. Duenez (Duenez I), 201 S.W.3d 674, 675
(Tex. 2006). The Duenezes pursued a declaratory judgment that the care was
covered. Id. We held that ERS has exclusive jurisdiction over coverage
decisions and dismissed the case for want of jurisdiction. Id. at 676. 





[2] The
Duenezes sued the drunk driver and the owner of the convenience store that sold
the drunk driver alcohol on the day of the accident, obtaining a $35 million
jury verdict that the court of appeals affirmed. F.F.P. Operating Partners,
L.P. v. Duenez, 237 S.W.3d 680, 682–83 (Tex. 2007) (Duenez II).
While F.F.P.’s petition was pending before this Court, the Duenezes settled the
claims of Xavier, Irene, and Ashley Duenez. Id. We reversed and remanded
the remaining claims of Carlos and Pablo Duenez for a new trial, holding that
the trial court abused its discretion when it severed F.F.P.’s claims against
the drunk driver and when it refused to submit jury questions to allow the jury
to determine the drunk driver’s proportionate responsibility. Id. at
683, 694.