# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 7, 2013

Lyle W. Cayce
Clerk

No. 12-60234

STINSON PETROLEUM COMPANY, INCORPORATED

Debtor

---

THE UNSECURED CREDITORS COMMITTEE

Plaintiff

v.

COMMUNITY BANK, ELLISVILLE MISSISSIPPI, a/k/a Community Bank

Defendant - Appellee

v.

DEREK A. HENDERSON,

Trustee - Appellant

---

Appeal from the United States District Court
for the Southern District of Mississippi

---

Before BARKSDALE, DENNIS, and GRAVES, Circuit Judges.

PER CURIAM:[*]

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-60234

Stinson Petroleum Company ("Stinson") engaged in a check-kiting scheme using checking accounts Stinson held with Community Bank ("Community") and Bank of Evergreen ("Evergreen").[1] Stinson perpetrated the kite by depositing worthless checks into its account with Community that were drawn on its account with Evergreen while simultaneously depositing worthless checks into the latter that were drawn on the former. By circulating worthless checks between the two accounts, and by taking advantage of provisional credits that both banks extended to deposits not yet collected, Stinson created the impression of a positive account balance while substantial debt accrued.

As kites are prone to do, the scheme eventually collapsed. Evergreen was the first to uncover the kite, so it did not incur any losses. Community, by contrast, was not so lucky. Community ultimately determined that, because of the kite, Stinson accumulated an overdraft of between $6 and $7 million in its account with Community. Community met with Stinson and Evergreen and agreed to receive two wire transfers worth $3.5 million from Stinson's Evergreen account.

Stinson subsequently filed for bankruptcy under Chapter 11, and a committee of unsecured creditors ("the Creditors") commenced an adversary proceeding against Community seeking to avoid the two wire transfers as avoidable preferences under 11 U.S.C. § 547(b). The bankruptcy was later converted to Chapter 7, and bankruptcy trustee Derek A. Henderson ("the Trustee") was substituted as the plaintiff. Ultimately, both the bankruptcy court

---

[1] "Check kiting consists of drawing checks on an account in one bank and depositing them in an account in a second bank when neither account has sufficient funds to cover the amounts drawn. Just before the checks are returned for payment to the first bank, the kiter covers them by depositing checks drawn on the account in the second bank. Due to the delay created by the collection of funds by one bank from the other, known as the 'float' time, an artificial balance is created." *United States v. Stone*, 954 F.2d 1187, 1188 n.1 (6th Cir. 1992).

and the district court concluded that the wire transfers were not avoidable preferences, and the Trustee appealed.

At issue is whether Community, because of the wire transfers, improved its position, meaning that it fared better than it would have fared under Stinson's Chapter 7 liquidation. The Bankruptcy Code provides that the Trustee has the burden of demonstrating that Community would have received less under Chapter 7 than it did via the prepetition transfers. We conclude that the lower courts did not clearly err in determining that the Trustee failed to satisfy this burden and therefore AFFIRM the judgment of the district court.

## BACKGROUND

Evergreen became suspicious of Stinson's activity sometime around the weekend of July 4, 2009 and froze the company's account two days later. Consequently, the kite collapsed. Before Community learned that Evergreen had uncovered the check-kiting scheme and, by returning checks for insufficient funds, taken steps to protect itself, Community continued to grant Stinson provisional credit, of which Stinson availed itself. This resulted in Stinson's overdraft with Community, which the bank determined to be between $6 and $7 million.

In light of this debt, Community met with representatives from Stinson and Evergreen and agreed to receive a direct payment of $3.5 million via two wire transfers from Stinson's account with Evergreen. The first wire transfer totaled $1,992,863 and included a notation in the written instructions that read, "payment for checks #2226, 2231, 2229," three checks drawn from Stinson's Evergreen account and deposited in its Community account on June 30, 2009. The second wire transfer totaled $1,507,137 and included a notation in the written instructions that read, "payment of returned checks." According to testimony later heard by the bankruptcy court, the purpose of the wire transfers

No. 12-60234

was to reimburse Community for the eighteen checks Evergreen returned to Community after the kite collapsed.

Stinson later filed for Chapter 11 bankruptcy, at which point the Creditors commenced their adversary proceeding against Community, the prosecution of which was eventually charged to the Trustee once the bankruptcy was converted from Chapter 11 to Chapter 7. Both the Trustee and Community cross-moved the bankruptcy court for summary judgment, but the court denied both motions. The parties tried the wire-transfer claims before the bankruptcy court over the course of two days. Noteworthy here, Community's senior vice president testified at trial that the bank may have been able to collect the $3.5 million via Chapter 7.

The bankruptcy court found that the wire transfers were not avoidable preferences. Specifically, the bankruptcy court found that, because Community granted provisional credit to Stinson and because Stinson took advantage of this credit, Community held a perfected, first-priority security interest in the eighteen returned checks and their proceeds and that the Trustee had failed to prove that the transfers were not intended to satisfy Community's security interest. Consequently, the bankruptcy court ruled that the wire transfers did not deplete Stinson's bankruptcy estate and did not improve Community's position relative to how the bank would have fared via Chapter 7. The district court affirmed the bankruptcy court's ruling. The district court observed that the Trustee had the burden of proving that Community would have received less than $3.5 million via Chapter 7 liquidation and concluded that "the record contains scant evidence to that effect." The Trustee timely appealed.

**STANDARD OF REVIEW**

We review a bankruptcy appeal from the district court "applying the same standard to the bankruptcy court's findings of fact and conclusions of law that the district court applied." *In re Morrison*, 555 F.3d 473, 480 (5th Cir. 2009).

4

Namely, we review "findings of fact . . . for clear error[] and . . . conclusions of law . . . *de novo.*" *Id.* We review mixed questions of law and fact *de novo. In re San Patricio Cnty. Cmty. Action Agency*, 575 F.3d 553, 557 (5th Cir. 2009). Whether a transfer constitutes an avoidable preference is a question of law; however, we review the fact question underlying any element of the Trustee's preference claim for clear error. *See In re Ramba, Inc.*, 416 F.3d 394, 401-02 (5th Cir. 2005).

"A finding of fact is clearly erroneous only if on the entire evidence, the court is left with the definite and firm conviction that a mistake has been committed." *In re Duncan*, 562 F.3d 688, 694 (5th Cir. 2009) (internal quotation marks omitted). If the bankruptcy court's view of the evidence "is plausible in light of the record viewed in its entirety, [we] may not reverse it even though convinced that had [we] been sitting as a trier of fact, [we] would have weighed the evidence differently." *In re Martin*, 963 F.2d 809, 814 (5th Cir. 1992) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985)) (internal quotation marks omitted). In fact, "[if] there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Id.* (quoting *Anderson*, 470 U.S. at 574) (internal quotation marks omitted).

## DISCUSSION

### A.

The Trustee's preference claim is based on Section 547(b), which provides:

(b)     Except as provided in subsections (c) and (I) of this section, the     trustee may avoid any transfer of an interest of the debtor in property—

    (1)     to or for the benefit of a creditor;

    (2)     for or on account of an antecedent debt owed by the debtor before such transfer was made;

    (3)     made while the debtor was insolvent;

    (4)     made—

No. 12-60234

(A)    on or within 90 days before the date of the filing of the petition; or

(B)    between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5)    that enables such creditor to receive more than such creditor would receive if—

(A)    the case were a case under chapter 7 of this title;

(B)    the transfer had not been made; and

(C)    such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).

"Section 547(b) . . . allows a trustee to recover as a preferential payment certain transfers made by a debtor to a creditor within the ninety-day period prior to bankruptcy." *Braniff Airways, Inc. v. Exxon Co., U.S.A.*, 814 F.2d 1030, 1033 (5th Cir. 1987). Its purpose is twofold: (1) it permits a trustee to avoid pre-bankruptcy transfers occurring on the eve of bankruptcy so as to discourage creditors "from racing to the courthouse to dismember the debtor during his slide into bankruptcy"; and (2) it ensures fair distribution among the creditors. *Union Bank v. Wolas*, 502 U.S. 151, 161 (1991) (quoting H.R. REP. NO. 95-595, at 177 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6138) (internal quotation marks omitted).

In this case, Community conceded at trial that the Trustee could prove the first four elements of § 547(b) and disputed only the Trustee's claims under § 547(b)(5). Accordingly, at issue is "the requirement that before a trustee in bankruptcy [may] avoid a preferential payment, the trustee must establish that the payment enabled the creditor to receive more than the creditor would have received upon liquidation under Chapter 7 of the bankruptcy code." *Braniff Airways*, 814 F.2d at 1034 (footnote omitted). This test is often referred to as the

No. 12-60234

"greater percentage test" or the "improvement in position" test. *See, e.g.*, *In re El Paso Refinery, LP*, 171 F.3d 249, 253 (5th Cir. 1999); *In re Clark Pipe & Supply Co.*, 893 F.2d 693, 698 (5th Cir. 1990). Importantly, the Trustee bears the burden on this point. 11 U.S.C. § 547(g); *Braniff Airways*, 814 F.2d at 1034 n.3.

Under this test, the bankruptcy court was required "to construct a hypothetical Chapter 7 liquidation [based on the evidence that the parties presented at trial] and determine what the creditor would have received had the transfers not taken place." *In re N.A. Flash Found. Inc.*, 298 F. App'x 355, 359 (5th Cir. 2008) (citing *In re ML & Assocs., Inc.*, 301 B.R. 195, 202 (Bankr. N.D. Tex. 2003)). "If the creditor receives a greater percentage of its debt as a result of the prepetition transfer than it would have in a bankruptcy distribution, the transfer is preferential." *Id.* (citing *In re El Paso Refinery*, 171 F.3d at 253-54).

B.

In analyzing whether Community received more via the wire transfers than it would have received under Chapter 7, we must "consider how the debt would have been treated in a Chapter 7 liquidation." *Braniff Airways*, 814 F.2d at 1034. Here, Community's status as Stinson's creditor is the locus of the inquiry because "a fully secured creditor who receives a prepetition payment does not receive a greater percentage than he would have in a bankruptcy proceeding." *In re El Paso Refinery*, 171 F.3d at 254. This is "because as a fully secured creditor, [Community] would have recovered 100% payment in a bankruptcy proceeding." *Id.* Accordingly, "[p]ayments to a fully secured creditor are not preferential because the creditor does not receive more than he would in a Chapter 7 liquidation." *Braniff Airways*, 814 F.2d at 1034 (alteration in original) (quoting *In re Mason & Dixon Lines, Inc.*, 65 B.R. 973, 977 (Bankr. M.D.N.C. 1986)) (internal quotation marks omitted).

Relevant here is section 75-4-210(a) of the Mississippi Code, which provides:

(a)    A collecting bank has a security interest in an item and any accompanying documents or the proceeds of either:

(1)    In case of an item deposited in an account, to the extent to which credit given for the item has been withdrawn or applied;

(2)    In case of an item for which it has given credit available for withdrawal as of right, to the extent of the credit given, whether or not the credit is drawn upon or there is a right of charge-back; or

(3)    If it makes an advance on or against the item.

MISS. CODE ANN. § 75-4-210(a).  The Trustee acknowledges that this provision means that "a bank that extends provisional credit on a deposited check prior to actually collecting funds on that check automatically obtains a perfected security interest in the check and its proceeds" and that this is precisely the situation in which Community found itself.  Nonetheless, and despite case law providing that a fully secured creditor who receives a prepetition payment has, as a matter of law, not received a preferential transfer, *see In re El Paso Refinery*, 171 F.3d at 254; *Braniff Airways*, 814 F.2d at 1034, the Trustee argues that Community could not guarantee when and whether it would have received any payment and thus faults the district court for improperly assuming that Community would have received $3.5 million from Stinson via Chapter 7.

We do not accept the Trustee's argument.  The relevant inquiry is whether Community, because of the $3.5 million wire transfers, improved its position relative to how well it would have fared in a hypothetical Chapter 7 liquidation. Specifically, the Trustee has the burden of showing "that the payment enabled the creditor to receive more than the creditor would have received upon liquidation under Chapter 7 of the bankruptcy code." *Braniff Airways*, 814 F.2d at 1034 & n.3.  Phrased another way, *the Trustee* must prove that Community

would have received less under Chapter 7. Here, the district court did not improperly assume that Community would have recouped $3.5 million via Chapter 7; rather, the district court did not clearly err in concluding that the Trustee failed to satisfy his burden of proving that Community would not have received at least $3.5 million in a Chapter 7 liquidation.

Given that the Trustee concedes that Community was a fully secured creditor by operation of section 75-4-210 of the Mississippi Code, the prepetition payment Community received is, as a matter of law, not a preferential transfer avoidable under 11 U.S.C. § 547(b). *See In re El Paso Refinery*, 171 F.3d at 254; *Braniff Airways*, 814 F.2d at 1034. Moreover, the district court's conclusion is supported by the record. Community's senior vice president testified that the bank may have been able to collect the $3.5 million via Chapter 7. Given "two permissible views of the evidence, the [bankruptcy courts]'s choice between them cannot be clearly erroneous." *In re Martin*, 963 F.2d at 814 (quoting *Anderson*, 470 U.S. at 574) (internal quotation marks omitted). We therefore conclude that the lower courts did not clearly err in determining that the $3.5 million wire transfers were not avoidable preferences under § 547(b).

## CONCLUSION

For these reasons, we AFFIRM the judgment of the district court.