NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0327n.06

No. 13-6188

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| In re: LORETTA J. HART | ) | |
| | ) | **FILED** |
| Debtor | ) | Apr 28, 2014 |
| --------------------------------------------------------- | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| LORETTA J. HART, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| Plaintiff-Appellant, | ) | THE EASTERN DISTRICT OF |
| | ) | TENNESSEE |
| v. | ) | |
| | ) | |
| SOUTHERN HERITAGE BANK, | ) | |
| | ) | |
| Defendant-Appellee. | ) | OPINION |

BEFORE: DAUGHTREY, McKEAGUE, and DONALD, Circuit Judges.

**BERNICE B. DONALD, Circuit Judge.** This appeal requires us to determine whether

the decision of the United States Supreme Court in *Stern v. Marshall*, 131 S. Ct. 2594 (2011),

deprives a bankruptcy court of constitutional authority to enter a final monetary judgment in a

dischargeability action under 11 U.S.C. § 523(a)(2)(B). For the following reasons, we **AFFIRM**

the judgment of the bankruptcy court.

### I.

Loretta J. Hart ("Hart") filed a Chapter 11 bankruptcy proceeding in the United States

Bankruptcy Court for the Eastern District of Tennessee on October 22, 2009. On November 5,

2009, the bankruptcy court converted Hart's petition to one under Chapter 7. Southern Heritage Bank ("Bank") then initiated an adversary proceeding against Hart in the bankruptcy court under 11 U.S.C. § 523 on February 17, 2010. The Bank objected to the discharge of four loans that it had extended to Hart.

The bankruptcy court found all four loans non-dischargeable under 11 U.S.C. § 523(a)(2)(B) and determined the amounts of the non-dischargeable debts in an order entered on May 20, 2011 ("May 20 order"). The court, however, did not enter a final monetary judgment on those amounts. On May 3, 2012, the Bank filed a motion under Federal Rule of Bankruptcy Procedure 9024 to amend the bankruptcy court's May 20 order on the ground of mistake. Specifically, the Bank requested that the court amend the order to include an entry of judgment on the amount of each non-dischargeable loan. The bankruptcy court granted the motion over Hart's objections, including her assertion that the bankruptcy court lacked constitutional authority to take such action following the Supreme Court's decision in *Stern v. Marshall*, 131 S. Ct. 2594 (2011). Hart appealed the bankruptcy court's decision to the United States District Court for the Eastern District of Tennessee, and the district court affirmed. This appeal followed.

II.

A.

When this Court confronts an appeal from the decision of a district court in a case that originated in bankruptcy court, "we directly review the decision of the bankruptcy court rather than the district court's review of the bankruptcy court's decision." *Stevenson v. J.C. Bradford & Co.* (*In re Cannon*), 277 F.3d 838, 849 (6th Cir. 2002). We review the bankruptcy court's conclusions of law de novo and findings of fact for clear error. *Id.*

B.

In *Stern v. Marshall*, the Supreme Court of the United States confronted an appeal concerning the bankruptcy estate of Vickie Lynn Marshall ("Vickie"). 131 S. Ct. at 2601. Vickie's husband, J. Howard Marshall, II ("J. Howard"), omitted her from his will. *Id.* Vickie filed suit in a Texas state probate court against E. Pierce Marshall ("Pierce"), J. Howard's son, alleging that Pierce fraudulently induced J. Howard to sign a living trust excluding Vickie. *Id.* Pierce contested the claim and, after J. Howard died, defended his will. *Id.*

After J. Howard's death, Vickie filed for bankruptcy in a California federal court. *Id.* Pierce filed a complaint in that bankruptcy proceeding, alleging that Vickie defamed him and seeking a declaration that the defamation claim was non-dischargeable in bankruptcy. *Id.* Pierce also filed a proof of claim and sought damages from Vickie's bankruptcy estate for the alleged defamation. *Id.* Vickie responded by filing a counterclaim for tortious interference, alleging that Pierce unlawfully prevented J. Howard from providing her with half his property. *Id.* The bankruptcy court granted summary judgment to Vickie on Pierce's defamation claim, issued judgment in Vickie's favor on the tortious interference counterclaim, and awarded Vickie more than $400 million in compensatory damages and $25 million in punitive damages. *Id.*

By the second time the case reached the Supreme Court, only two issues remained. *Id.* at 2600. The first issue concerned whether bankruptcy courts have statutory authority under 28 U.S.C. § 157(b) to issue a final judgment on a state-law counterclaim. *Id.* If so, the second issue concerned whether Article III of the United States Constitution prohibits the exercise of that statutory authority. *Id.*

The Supreme Court held that the bankruptcy court had statutory authority to enter judgment on Vickie's counterclaim. *Id.* at 2608. Section 157(b)(1) of the Bankruptcy Code grants bankruptcy courts the authority to "enter appropriate orders and judgments" in "all core proceedings arising under title 11." Because § 157(b)(2)(C) defines as core proceedings "counterclaims by the estate against persons filing claims against the estate," the bankruptcy court did not exceed its authority under the statute. *Id.* at 2604.

Conversely, the Supreme Court held that Article III of the United States Constitution prevented the bankruptcy court from exercising its statutory authority to enter final judgment on Vickie's state-law counterclaim. *Id.* at 2620. Vickie's counterclaim was "a state law action independent of the federal bankruptcy law and not necessarily resolvable by a ruling on the creditor's proof of claim in bankruptcy." *Id.* at 2611. The Supreme Court concluded that, by entering final judgment on a state-law claim unrelated to the bankruptcy proceeding, the Article I bankruptcy court "exercised the Judicial Power of the United States" reserved for Article III judges. *Id.* Section 157(b), as applied to the bankruptcy court's entry of final judgment on Vickie's state-law counterclaim unrelated to bankruptcy, exceeded the limits Article III imposes on Congress "in one isolated respect." *Id.* at 2620.

C.

In the present appeal, Hart argues that the Supreme Court's holding in *Stern* deprives the bankruptcy court of its constitutional authority to enter a final monetary judgment in this

dischargeability action under § 523(a)(2)(B).[1]  Hart's argument would extend *Stern* too far because her case is both factually and legally distinguishable.

Hart's case is factually distinguishable from *Stern* because she did not assert a counterclaim based on state law against the Bank in the adversary proceeding under § 523.  The only claim at issue in the bankruptcy court was the Bank's complaint objecting to the discharge of the four loans it had extended to Hart.

Hart's case is legally distinguishable from *Stern* for two important reasons.  First, in contrast to *Stern*, where "Vickie's claim [was] in no way derived from or dependent upon bankruptcy law," 131 S. Ct. at 2618, the Bank's claim against Hart arises specifically in bankruptcy.  28 U.S.C. § 157(b)(2)(I)-(J) (including "determinations as to the dischargeability of particular debts" and "objections to discharges" in the list of core proceedings arising under title 11).  Second, under this Court's pre- and post-*Stern* precedents, the Bank's non-dischargeability claim was "resolvable by a ruling on the creditor's proof of claim in bankruptcy."  *Stern*, 131 S. Ct. at 2611; *see Waldman v. Stone*, 698 F.3d 910, 919-20 (6th Cir. 2013); *Longo v. McLaren* (*In re McLaren*), 3 F.3d 958, 965-66 (6th Cir. 1993).  In *Longo v. McLaren*, we held pre-*Stern* that the bankruptcy court may "adjudge the validity and amount of a claim together with its dischargeability" and enter a money judgment on such a claim.  3 F.3d at 965.  Similarly, in *Waldman v. Stone*, we held post-*Stern* that the bankruptcy court had authority to enter final judgment on dischargeability claims that arose under federal law and "were part and parcel of the claims-allowance process in bankruptcy."  698 F.3d at 920.  Because "the action at issue stems

---

[1] We note bankruptcy courts' well-settled statutory and constitutional authority to make dischargeability determinations is distinct from the question of whether the bankruptcy courts may enter a final monetary judgment after determining the amount of the discharge.

from the bankruptcy itself [and] would necessarily be resolved in the claims allowance process," *Stern*, 131 S. Ct. at 2618, *Stern* does not strip the bankruptcy court of its constitutional authority to enter a final monetary judgment in this dischargeability action under § 523(a)(2)(B).

D.

Hart also argues that the bankruptcy court exceeded its constitutional authority by entering a final monetary judgment when litigation related to the bankruptcy proceedings was pending in state court. We disagree.

The bankruptcy court did not exceed its authority by entering a final monetary judgment, even though the decision precluded Hart from pursuing counterclaims in state court. Hart asserts that she made counterclaims based on state law, independent from the federal claims, which were unresolvable during the bankruptcy proceedings. The bankruptcy court found, however, that Hart never filed any counterclaims—state or federal—against the Bank. Hart notes that the case in Tennessee state court was stayed during the federal bankruptcy proceedings and that she planned to file counterclaims there once the stay was lifted. But even if Hart had filed counterclaims in connection with the state litigation, those claims would have been precluded by the final federal monetary judgment, a decision the bankruptcy court had authority to make. *See Waldman*, 698 F.3d at 920.

If the bankruptcy court had entered a judgment that directly extinguished counterclaims filed in state court, and those claims were separate and independent from the bankruptcy proceedings (like the counterclaim in *Stern*), then the bankruptcy court arguably would have exceeded its authority. *See Stern*, 131 S. Ct. at 2611. But, here, the bankruptcy court did not address Hart's state counterclaims directly because she had not filed any counterclaims to

address; it merely entered a final monetary judgment on a federal issue—dischargeability—which then indirectly precluded Hart from filing counterclaims in state court. Hart should not be able to escape the collateral effects of the bankruptcy court's decision made under proper authority. In addition, the bankruptcy court preserved for Hart an opportunity to benefit from the state-court litigation between the Bank and Optimum by reserving the possibility of an offset for Hart were Optimum to succeed. The bankruptcy court's judgment thus has not prevented Hart from benefiting from the state proceedings. The lower court therefore did not err when it granted the Bank's Rule 9024 motion to amend the May 20 order on the ground of mistake.

III.

We **AFFIRM** the judgment of the bankruptcy court.