In re Jan Marshall DAMBOWSKY,
Debtor.

John J. Harvey, Jr. and Impact Point
Consulting, Inc., Plaintiffs,

v.

Jan Marshall Dambowsky, a/k/a
Jon Marshall, Defendant.

Bankruptcy No. 13–81410.
Adversary No. 14–9010.

United States Bankruptcy Court,
M.D. North Carolina,
Durham Division.

Signed Jan. 06, 2015.

Filed Jan. 07, 2015.

J. Daniel Bishop, Erwin, Bishop, Capitano & Moss, P.A., Charlotte, NC, for Creditor.

Daniel C. Bruton, Bell, Davis & Pitt, P.A., Winston–Salem, NC, for Debtor.

John A. Northen, Chapel Hill, NC, for Trustee.

### ORDER DENYING MOTION TO DISMISS COUNTERCLAIM

BENJAMIN A. KAHN, Bankruptcy Judge.

This case came before the Court for hearing on August 28, 2014, upon the Answer to Counterclaim filed by John J. Harvey, Jr. ("Harvey") and Impact Point Consulting, Incorporated ("Impact Point") (together, "Plaintiffs") on May 5, 2014 [Doc. # 16] ("Answer to Counterclaim"), the Court's Scheduling Order entered May 19, 2014 [Doc. # 18] (the "Scheduling Order"), the Plaintiffs' Brief in Support of Dispositive Threshold Defenses Pursuant to Scheduling Order [Doc. # 21] ("Plaintiffs" Brief), and Defendant's Response Brief Regarding Plaintiffs' Demand for Dismissal of Counterclaim [Doc. # 23] ("Defendant's Brief").

## Procedural Background

This adversary proceeding was commenced on February 9, 2014, by the filing of the Plaintiffs' Complaint (the "Complaint") seeking a judgment excepting certain obligations from the Debtor's discharge, or, in the alternative, barring the Debtor's discharge pursuant to 11 U.S.C. § 727. On February 10, 2014, the Plaintiffs filed their first Amended Complaint [Doc. # 4] (the "First Amended Complaint"). On March 12, 2014, the Defendant filed his Motion to Dismiss the First Amended Complaint [Doc. # 7] (the "Motion to Dismiss"), alleging improper service. On March 25, 2014, the Defendant withdrew his Motion to Dismiss, and, on April 11, 2014, the Defendant filed his Answer to the Complaint [Doc. # 14] (the "Answer"). In the Answer, the Defendant asserted a counterclaim requesting that the Court liquidate the amount of any damages determined to be non-dischargeable (the "Counterclaim").[1] On May 5, 2014, the Plaintiffs filed their Reply to the Counterclaim ("Plaintiffs' Reply").[2]

In their Reply, the Plaintiffs demand that the Court dismiss the Counterclaim, asserting that the Court lacks subject matter jurisdiction over the underlying state court claims. In the alternative, Plaintiffs argued that dismissal of the Counterclaim is appropriate under the principles of permissive abstention. At the hearing, J. Daniel Bishop appeared for the Plaintiffs and Daniel C. Bruton appeared for the Defendant, Jan Marshall Dambowsky (the "Debtor" or "Dambowsky"). Pursuant to the terms of the Scheduling Order, the Court construed the Plaintiffs' brief as a motion to dismiss the Counterclaim, or, in the alternative, a motion for permissive abstention. At the conclusion of the hearing, the Court denied the motion to dismiss and the motion for permissive abstention.[3] This opinion explains the bases for the Court's ruling.

## Factual Allegations [4]

The claims in this adversary proceeding arise from the business relationship between Harvey and Dambowsky. At the time Plaintiff John J. Harvey ("Harvey") met Dambowsky, both were independently engaged in businesses dealing with military procurement contracts. [Second Amended Complaint ¶ 7–8]. Dambowsky, identifying himself as "Jon Marshall," worked as a consultant to military contractors and had a business called Defense Logistics Solutions, Inc. ("DLS"). [Second Amended Complaint ¶ 8–11].

---

1. At the hearing on this matter, the Court asked why the request for liquidation was brought as a counterclaim, when the Defendant (correctly) argued that liquidation was integral to the determination of dischargeability in this case. Counsel responded that he asserted the counterclaim out of an abundance of caution after being told by Plaintiffs' counsel that the Plaintiffs objected to any liquidation of dischargeable claims by this Court.

2. On June 26, 2014, the Plaintiffs filed their second Amended Complaint [Doc. # 22] (the "Second Amended Complaint"). On July 10, 2014, Defendant filed his Answer to the Amended Complaint [Doc. # 24] (the "Amended Answer"). The Amended Answer contained an identical counterclaim to that asserted in the Answer. The Plaintiffs did not file a duplicate reply to the counterclaim in the Amended Answer. However, the Defendant has not contended that an amended answer to the identical counterclaim was required, and this Court has considered the Reply with respect to the Amended Answer.

3. The Reply did not assert or purport to assert a motion for mandatory abstention, and no such motion was timely filed.

4. Although this matter has been construed as Plaintiff's motion to dismiss the Counterclaim, due to the peculiar procedural posture of the case and solely for purposes of the motion to dismiss and motion to abstain, the Court has considered the allegations in the Second Amended Complaint as true.

The Complaint alleges that DLS was a sham corporation, and that Dambowsky intentionally misled Plaintiffs about DLS in order to defraud Plaintiffs and to misappropriate commission and other funds owed to Harvey as a result of their business ventures. [Second Amended Complaint ¶ 59]. Dambowsky allegedly also made false statements concerning these funds in order to prevent Plaintiffs from recovering funds owed to them. [Second Amended Complaint ¶ 42]. Plaintiffs further contend that Dambowsky's bankruptcy petition was strategically filed to conceal future profits. [Second Amended Complaint ¶ 56].

In Plaintiffs' Reply, the Plaintiffs assert three legal defenses to the Counterclaim. Plaintiffs contend that: (1) the Court does not have subject matter jurisdiction to liquidate a non-dischargeable claim; (2) if the Court were to liquidate any debt found to be non-dischargeable, Plaintiffs would be denied their Seventh Amendment right to a jury trial; and (3) to the extent that the Court finds it has subject matter jurisdiction to liquidate any claims found to be non-dischargeable, the Court should decline to exercise that jurisdiction in the interest of judicial economy. [Plaintiffs' Reply, at 2]. For the reasons set forth herein, the Court denied the Plaintiffs' request for this Court to dismiss or to abstain from hearing the Counterclaim.

### Discussion

There are four issues to be resolved in the matter before the Court: (1) whether the Court has subject matter jurisdiction to liquidate Plaintiffs' claims in the context of a non-dischargeability action; (2) whether this Court, as a non-Article III court, has statutory and constitutional authority to liquidate and enter final judgment with respect to any amounts determined to be non-dischargeable without the Plaintiffs' consent; (3) if the Court does have jurisdiction and authority, whether the Court

nevertheless should abstain from liquidating the claims; and (4) whether the Plaintiffs have a right to trial by jury under the Seventh Amendment to the United States Constitution in connection with this dischargeability action.

 Although they are related concepts as explained below, the scope of the bankruptcy courts' subject matter jurisdiction, their statutory authority to hear and/or determine any particular matter, and their constitutional authority to do so, each are delineated by different statutory, constitutional, and/or judicial authorities. Section 1334 of title 28 sets forth the extent of bankruptcy subject matter jurisdiction. The bankruptcy courts' statutory authority to hear and/or determine matters is set forth in 28 U.S.C. § 157. Section 157 is not jurisdictional, but simply allocates the statutory authority to enter final judgments between the bankruptcy court and the district court. *Stern v. Marshall,* —— U.S. ——, ——, 131 S.Ct. 2594, 2606–07, 180 L.Ed.2d 475 (2011). The bankruptcy courts' constitutional powers, in turn, are governed by the scope of power conferred upon Congress under the Bankruptcy Clause of the United States Constitution, Article I, Section 8, Clause 4 ("The Congress shall have Power To ... establish ... uniform Laws on the subject of Bankruptcies throughout the United States ...."), and the scope of authority allocated by and between tribunals created under Articles I and III of the United States Constitution, each as applied and interpreted by the opinions of the United States Supreme Court. Therefore, in order for a bankruptcy court to hear and determine any matter, it must have subject matter jurisdiction under 28 U.S.C. § 1334, statutory authority under 28 U.S.C. § 157, and constitutional authority.

### Subject Matter Jurisdiction

 Primarily relying upon *Stern*, Plaintiffs assert that this Court does not have subject matter jurisdiction to liquidate any claims the Plaintiffs have asserted against Dambowsky. Plaintiffs' filings with the Court generally conflate the Court's subject matter jurisdiction with the Court's constitutional authority as an Article I tribunal. In *Stern*, the Supreme Court instructed that whether the bankruptcy court has subject matter jurisdiction to hear a matter is distinct from whether the bankruptcy court has the statutory authority to liquidate a claim and enter a final order and judgment on that matter. *See Stern*, 131 S.Ct. at 2607–08 (whether a proceeding is core or non-core under 28 U.S.C. § 157(b) "does not implicate questions of subject matter jurisdiction").[5] The Court in *Stern* held that, while the bankruptcy court had subject matter jurisdiction and statutory authority to enter a final judgment on the counterclaim at issue in that case, it did not have constitutional authority to do so. *Id.* at 2608. Some bankruptcy courts have thus limited the holding in *Stern* to an analysis of the constitutional authority of the bankruptcy courts, rather than one affecting subject matter jurisdiction. *See, e.g., Farooqi v. Carroll (In re Carroll)*, 464 B.R. 293, 311 (Bankr.N.D.Tex.2011), *aff'd*, 486 B.R. 718 (N.D.Tex.2013) ("*Stern* is not a subject matter jurisdiction case."). Nevertheless, the sweeping rationale in *Stern* and perhaps the pre-*Stern* holdings interpreting 28 U.S.C. § 157 in terms of "juris-

diction," have caused a number of courts to refer to bankruptcy courts' jurisdiction with respect to concepts of authority. *See, e.g., Frazin v. Haynes & Boone, L.L.P. (In re Frazin)*, 732 F.3d 313 (5th Cir.2013) (finding that the bankruptcy court lacked constitutional authority to enter a judgment with respect to Texas' Deceptive Trade Practices Act ("DTPA"), and concluding that, "although the bankruptcy court did not have *jurisdiction* to make a final judgment on the DTPA claim, the district court may have that *authority*" (emphasis added)). With deeper consideration, others have noted that the "concern over subject matter jurisdiction bleeds into *Stern* concerns." *Deitz v. Ford (In re Deitz)*, 469 B.R. 11, 28 (9th Cir. BAP 2012), *aff'd*, 760 F.3d 1038 (9th Cir.2014) (Markell, J., concurring). For the reasons set forth herein, this Court agrees, and further concludes that this is a two way street, i.e. consideration of the constitutional authority of the bankruptcy courts similarly bleeds into consideration of the bankruptcy courts' subject matter jurisdiction.

### Various Analyses for the Bases of Subject Matter Jurisdiction in Dischargeability Proceedings

 Bankruptcy subject matter jurisdiction is granted to the district courts under 28 U.S.C. § 1334. Section 1334(a), with some exception, gives the district courts exclusive and original jurisdiction of all cases under title 11. Section 1334(b), also with some exceptions, gives the dis-

---

**5.** The Court in *Stern* did not hold the converse, i.e. that the existence and nature of bankruptcy subject matter jurisdiction does not affect whether a matter is a core or non-core proceeding which the bankruptcy court has authority to hear and determine. Of course it does. In order for a proceeding to be a "core" proceeding that the bankruptcy court may "hear and determine," it must first "arise in" a case under title 11 or "arise

under" title 11. 18 U.S.C. § 157(b)(1) ("Bankruptcy judges may hear and determine all cases under title 11 and *all core proceedings arising under title 11 or arising in a case under title 11....*" (emphasis added)). *See Stern*, 131 S.Ct. at 2605 ("Under our reading of the statute, core proceedings are those that arise in a bankruptcy case or arise under Title 11.").

trict courts original but not exclusive jurisdiction over "civil proceedings arising under title 11, or arising in or related to cases under title 11." As previously explained by this Court:

> Cases "arise under" Title 11 when the cause of action or substantive right claimed is created by the Bankruptcy Code.... Cases "arise in" a title 11 proceeding if they "are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy."

*Burns v. Dennis (In re Southeastern Materials, Inc.)*, 467 B.R. 337, 346 n. 4 (Bankr.M.D.N.C.2012) (citations omitted).

 Courts and commentators alike have struggled with enunciating the precise bases upon which the bankruptcy courts have subject matter jurisdiction and constitutional authority to enter money judgments in dischargeability proceedings. Despite this struggle, the vast majority of the courts to consider the issue have concluded that the bankruptcy courts have both subject matter jurisdiction and constitutional authority to liquidate such debts in the context of dischargeability actions.[6] This was the conclusion reached by each of the circuit courts to consider the issue prior to *Stern*. *See Heckert v. Dotson (In re Heckert)*, 272 F.3d 253, 257 (4th Cir. 2001) ("Entry of such judgments has been allowed where there is an unliquidated claim that a party seeks to have determined in an adversarial dischargeability proceeding." (citing *Cowen v. Kennedy*, 108 F.3d 1015, 1018 (9th Cir.1997);[7] *Lon-*

---

**6.** Some courts and commentators have drawn a further distinction between the bankruptcy court's liquidation of the debt on the one hand and the bankruptcy court's entering a money judgment upon which a plaintiff may seek a post-judgment enforcement of the liquidated obligation on the other. *See, e.g., Juan Juan Chen v. Wen Jing Huang (In re Wen Jing Huang)*, 509 B.R. 742, 748–49 (Bankr. D.Mass.2014). This Court does not believe that it is appropriate to draw a distinction between the liquidation of the debt and the entry of a "money judgment" thereon. The Court in *Stern* recognized that, where nothing further remains to be adjudicated with respect to an affirmative claim after the resolution of an issue properly decided under an Article I court's summary jurisdiction, the bankruptcy court may award affirmative relief otherwise only available in a plenary suit. *Stern*, 131 S.Ct. at 2615–18 (citing *Katchen v. Landy*, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966); and *Langenkamp v. Culp*, 498 U.S. 42, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990) (*per curiam*), and observing that such an additional plenary suit "would be a meaningless gesture"). Therefore, to the extent that the bankruptcy court has jurisdiction and authority to liquidate a claim based upon state law in the context of a dischargeability action, the bankruptcy court may enter an enforceable money judgment on that claim. Moreover, even if this Court did not have authority to enter a final judgment with respect to any underlying state law claims that are determined to be excepted from discharge, since the determination and liquidation of these claims is within this Court's authority, such conclusions would have preclusive effect on any other court that ultimately could be called upon to ender a such a judgment with respect to the underlying claims. *See Deitz*, 469 B.R. at 28 (Markell, J., concurring) (citing *Katchen v. Landy*, 382 U.S. 323, 334, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966), and, while not distinguishing between claim liquidation and the entry of a money judgment on any liquidated claims, observing that the "bankruptcy court's determination of the essential nucleus of facts [in a dischargeability action] would likely have issue preclusive effect on whatever court ultimately liquidated the claim"); *Frazin v. Haynes & Boone, L.L.P. (In re Frazin)*, 732 F.3d 313, 323–24 (5th Cir.2013) ("Because it was not necessary to decide the [Texas Deceptive Trade Practices Act "DTPA"] claim to rule on the Attorneys' fee applications, we conclude that the bankruptcy court lacked the authority to enter a final judgment as to that claim. Nevertheless, we hold that all factual determinations made in the court of analyzing Frazin's DTPA claim were within the court's constitutional authority because they were necessarily resolved in the process of adjudicating the fee applications."). .

**7.** The finding by the Fourth Circuit in *Heckert* that bankruptcy courts have the authority to

*go v. McLaren,* 3 F.3d 958, 966 (6th Cir. 1993); and *N.I.S. Corp. v. Hallahan,* 936 F.2d 1496, 1508 (7th Cir.1991))); *Sasson v. Sokoloff, M.D. (In re Sasson),* 424 F.3d 864, 868–69 (9th Cir.2005) (holding that the liquidation of, and entry of a money judgment for, a debt claimed to be non-dischargeable falls within the bankruptcy courts' supplemental jurisdiction under 28 U.S.C. §§ 1334 and 1367; *Johnson v. Riebesell (In re Riebesell),* 586 F.3d 782, 793–94 (10th Cir.2009); *Morrison v. W. Builders of Amarillo, Inc. (In re Morrison),* 555 F.3d 473, 478 n. 3 (5th Cir.2009). And this conclusion similarly has been reached by each of the circuit courts and the other courts that have considered the issue after *Stern.* See *Hart v. S. Heritage Bank (In re Hart),* 564 Fed.Appx. 773 (6th Cir.2014); *Cai v. Shenzhen Smart–In Industry Co., Ltd. (In re Cai),* 571 Fed.Appx. 580 (9th Cir.2014); *Islamov v. Ungar (In re Ungar),* 633 F.3d 675, 679 (8th Cir. 2011); *see also Juan Juan Chen v. Wen Jing Huang (In re Wen Jing Huang),* 509 B.R. 742, 748–49 (Bankr.D.Mass.2014); *Van–Voegler v. Myrtle (In re Myrtle),* 500 B.R. 441, 446 (Bankr.E.D.Va.2013) (finding that liquidation of the debt in a non-dischargeability proceeding is "integral" to the dischargeability determination, and citing *Deitz; Countrywide Home Loans, Inc. v. Cowin (In re Cowin),* 492 B.R. 858 (Bankr.S.D.Tex.2013); *Lawson v. Conley (In re Conley),* 482 B.R. 191 (Bankr. S.D.Ohio 2012); *Dragisic v. Boricich (In re Boricich),* 464 B.R. 335 (Bankr.N.D.Ill. 2011)); *Stanbrough v. Valle (In re Valle),* 469 B.R. 35, 43 (Bankr.D.Idaho 2012) (where a debt is unliquidated, the bankruptcy court must necessarily liquidate the debt to determine liability and damages in order to establish the underlying debt; this is "part and parcel" of the dischargeability determination and integral to restructuring the debtor-creditor relationship); *Farooqi v. Carroll (In re Carroll),* 464 B.R. 293, 313 (Bankr.N.D.Tex.2011), *aff'd,* 486 B.R. 718 (N.D.Tex.2013) (distinguishing the question of subject matter jurisdiction from *Stern's* discussion of constitutional authority on proceeding to liquidate a company's claims for fraudulent misrepresentation against a debtor, the Court stated, "district court clearly has subject matter jurisdiction of the Adversary." *Id.* at 310.).

While there appears to be virtual unanimity among the courts that bankruptcy courts can liquidate claims in dischargeability actions, there is disagreement over the nature of the bankruptcy courts' subject matter jurisdiction to do so. The variance among courts and commentators alike is caused by uncertainty of the nature and relationship of the dischargeability action vis-a-vis the establishment of the underlying claim under non-bankruptcy substantive law which is sought to be excepted from the debtor's discharge.

The determination of the dischargeability of a debt arises solely in the context of the bankruptcy proceeding, but the underlying debt is not based upon any right expressly created by title 11. Collier on Bankruptcy ("Collier") therefore concludes that dischargeability actions "arise in" cases under title 11. As explained by Collier, the matters that "arise in" a title 11 proceeding include:

> such things as allowance and disallowance of claims, orders in respect of ob-

---

liquidate nondischargeable claims has not been re-considered after *Stern.* For the reasons set forth herein, *Stern* has not clearly reversed this prior settled circuit law, and courts should not extrapolate from Supreme Court opinions in a manner that is inconsis-

tent with settled circuit law. *See Bakst v. Smokemist, Inc. (In re Gladstone),* 513 B.R. 149, 160 (Bankr.S.D.Fla.2014) (citing *McNeal v. GMAC Mortg., LLC (In re McNeal),* 735 F.3d 1263, 1265–66 (11th Cir.2012)).

taining credit, *determining discharge-ability of debt*, discharges, confirmation of plans and like matters. ·In none of these instances is there a "cause of action" created by statute, nor could any of the matters illustrated have been the subject of a lawsuit absent the filing of a bankruptcy case. Since they are not "related" proceedings, and do not "arise under title 11," they must perforce "arise in" title 11 cases.

Collier on Bankruptcy ¶ 3.01[3][e][iv] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) (emphasis added).[8]

Prior cases relied upon Collier for the proposition that dischargeability proceedings "arise under" title 11 because the exceptions to discharge are exclusively set forth in section 523 of the Bankruptcy Code. *See In re Toussaint,* 259 B.R. 96, 101 (Bankr.E.D.N.C.2000) (citing *Fidelity Nat'l Title Ins. Co. v. Franklin (In re Franklin),* 179 B.R. 913, 919–20 (Bankr. E.D.Cal.1995), which, in turn, cites a prior

edition of Collier, for the proposition that "causes of action for nondischargeability are created by Bankruptcy Code § 523" and therefore "arise under" title 11). In its most recent edition, Collier concludes that dischargeability actions "arise in" cases under title 11, in contrast to its previous conclusion that they "arise under" title 11. The distinction between these conclusions and the varying opinions of courts and commentators likely lies in whether the liquidation of the underlying claim is seen as part of the dischargeability proceeding, or whether those matters are considered to be distinct claims for relief. As explained by one court:

> At times the debt at issue has previously been liquidated; other times it has not. In the case of an unliquidated debt, the bankruptcy court must necessarily determine liability and damages in order to establish the underlying debt. Adjudication of the underlying claim, which arises under nonbankruptcy law, be-

---

**8.** Collier lists "discharges" in this description of matters "arising in" cases under title 11. Seemingly contradictorily, Collier describes "complaints objecting to the discharge of a debtor" as an example of matters "arising under" title 11. Collier ¶ 3.01[3][e][i]. Unlike an action to except a non-bankruptcy-law-based-debt from discharge, both the discharge and the enumerated bases upon which to deny a discharge arise solely under the Bankruptcy Code. *See* 11 U.S.C. § 727. Therefore, any proceeding objecting to a debtor's discharge "arises under" title 11. To the extent that Collier draws a distinction between the bankruptcy courts' jurisdiction to enter a discharge order and its jurisdiction with respect to a proceeding in which the plaintiff asserts an objection to the debtor's discharge, it is not clear that such a distinction renders the former a proceeding "arising in" a case under title 11. Rather, it is more likely correct that the entry of discharge order itself is exclusively reserved to the jurisdiction and power of the bankruptcy court by the bankruptcy power under the United States Constitution. *See Deitz,* 469 B.R. at 26 n. 2 (citing *Hanover Nat'l Bank v. Moyses,* 186 U.S. 181, 22 S.Ct.

857, 46 L.Ed. 1113 (1902), for the proposition that "the power to discharge the debtor from his contracts and legal liabilities" is granted to Congress, "and this the states were forbidden to do"). Certainly a state court may not therefore enter an order granting a debtor a bankruptcy discharge. Since 28 U.S.C. 1334(b) provides that the district courts do not have exclusive jurisdiction over proceedings "arising in" cases under title 11 or "arising under" title 11, the jurisdiction to enter an order granting a discharge "must perforce" be granted under § 1334(a), which grants the district courts exclusive jurisdiction "of all cases under title 11." Moreover, the entry of a discharge is not a "proceeding" or the result of a "proceeding" as contemplated by 28 U.S.C. § 1334(b), but results within a bankruptcy case by operation of the Bankruptcy Code under 11 U.S.C. §§ 727, 944, 1141, 1228, or 1328. *See* Collier ¶ 3.01[2] ("'Cases' under title 11 are to be distinguished from civil proceedings arising under title 11 or civil proceedings related to or arising in title 11 cases. 'Cases' are the subject of section 1334(a), while 'civil proceedings' are covered by section 1334(b).").

comes part and parcel of the discharge-ability determination and thus integral to restructuring the debtor-creditor relationship.

*Stanbrough v. Valle (In re Valle)*, 469 B.R. 35, 43 (Bankr.D.Idaho 2012). *Cf.*, *Morrison v. W. Builders of Amarillo, Inc.* (In re *Morrison)*, 555 F.3d 473, 479 (5th Cir. 2009) (noting that, in dischargeability actions, courts pay "little attention" to the distinctions between "arising under," "arising in,"[9] or "related to" jurisdiction because "[l]ogically, the litigation necessary to prove nondischargeability also proves the basis of and amount of the debt."); *Dragisic v. Boricich (In re Boricich)*, 464 B.R. 335, 337 (Bankr.N.D.Ill.2011) (on a creditor's dischargeability claim not yet liquidated when the creditor objected to the bankruptcy court's determination of an amount, the court held, "[q]uite clearly it was necessary here to determine the amount of debt in order to determine the debt that is nondischargeable").

Other courts see two distinct claims—one on the debt and one on dischargeability.[10] In the pre-*Stern* case *Riebesell* for example, the United States Court of Appeals for the Tenth Circuit held that bankruptcy courts have the authority to enter money judgments in dischargeability actions. The court, however, was entirely non-committal over the source of that authority, merely agreeing with the other circuits that had upheld the authority of the bankruptcy courts to do so. *Johnson v. Riebesell (In re Riebesell)*, 586 F.3d 782, 793–94 (10th Cir.2009) (citing several bases for the decisions, including that the determination lies within the equitable jurisdiction of the bankruptcy court, the debtor

has consented to the court's jurisdiction, and judicial economy, but not committing to any of these bases). The Court then stated that its prior law was not inconsistent with these rationales by curiously citing *RTC v. McKendry (In re McKendry)*, 40 F.3d 331, 336 (10th Cir.1994), for the proposition that, "[i]n bankruptcy court there are two separate and distinct causes of action[.] One cause of action is on the debt and the other cause of action is on the dischargeability of the debt."

Despite the conclusion of these courts that bankruptcy courts have subject matter jurisdiction to liquidate the underlying claims, this view that establishment of the underlying claim constitutes a distinct proceeding from the dischargeability determination in fact calls into question whether the bankruptcy court has subject matter jurisdiction over these underlying claims at all. As explained by a leading commentator:

> Notwithstanding Congress's desire that the federal courts should have bankruptcy jurisdiction under the current statute, if we apply the prevailing jurisdictional test to the creditor's request for a money judgment on a nondischargeable debt, we come to the inescapable conclusion that there is no federal bankruptcy jurisdiction.
>
> A state-law claim on which a creditor seeks a money judgment does not "arise under" the Bankruptcy Code. Furthermore, it does not "arise in" the bankruptcy case under the standard test for "arising in" proceedings, because the creditor's claim against the debtor would exist in exactly the same form even in

---

**9.** The court in *Morrison* speaks in terms of "core" versus "related to" proceedings. Nevertheless, in order for a proceeding to be a "core" proceeding that the bankruptcy court may "hear and determine," it must first "arise in" a case under title 11 or "arise under" title 11. *See supra*, n. 5.

**10.** The Court notes that 18 U.S.C. § 1334(b) grants bankruptcy subject matter jurisdiction with respect to "proceedings," rather than "claims" or "causes of action."

the absence of the debtor's bankruptcy filing. Indeed, that is precisely the upshot of the determination of non-dischargeability. Thus, if the claim on the underlying debt is within federal bankruptcy jurisdiction at all, it is because it is "related to" the debtor's bankruptcy case. Utilizing the Pacor test, however, because the only effect of any money judgment against the debtor would ... [have] no effect at all on property of the bankruptcy estate or creditors' claims against the estate, we would conclude that the claim is not "related to" the bankruptcy case.

Ralph Brubaker, *On the Nature of Federal Bankruptcy Jurisdiction: A General Statutory and Constitutional Theory* ("Brubaker"), 41 Wm. & Mary L.Rev. 743, 914–15 (2000) (footnotes omitted);[11] *see also Deitz v. Ford (In re Deitz)*, 469 B.R. 11, 27 (9th Cir. BAP 2012), *aff'd*, 760 F.3d 1038

(9th Cir.2014) (Markell, J., concurring) (citing Brubaker and questioning whether "related to" jurisdiction exists over the underlying claim in a dischargeability action because the result will not have an effect on the estate, especially in no-asset cases).[12]

For the reasons set forth below, this Court believes that consideration of its subject matter jurisdiction implicates constitutional concerns because consideration of the Court's constitutional authority affects the nature of whether the claim "arises in" a case under title 11, "arises under" title 11, or is "related to" a case under title 11. Concluding that the Court has constitutional authority to liquidate claims against a bankruptcy debtor in the context of a dischargeability action, the Court agrees with the court in *Valle* and the current version of Collier. A proceeding to except a debt from the debtor's

11. For the reasons set forth herein, this Court finds that the entire dischargeability proceeding falls within this Court's subject matter jurisdiction as "arising in" a case under title 11. Nevertheless, even if the underlying claims were jurisdictionally severable, the Court would have subject matter jurisdiction. As Brubaker and others conclude, the underlying claims are at a minimum "related to" the bankruptcy case as contemplated by Congress in 18 U.S.C. § 1334(b) even though they do not have an effect on the estate. Brubaker, 41 Wm. & Mary L. Rev. at 920–21 ("The only reconciliation consistent with the terms of the statute and legislative history regarding its purposes simply is to recognize that Pacor was wrong; third-party 'related to' bankruptcy jurisdiction is supplemental jurisdiction, and there is 'related to' bankruptcy jurisdiction over any third-party dispute sharing an in rem or an in personam supplemental relationship with a claim before the court (1) "arising under" the Bankruptcy Code, or (2) to which the federal bankruptcy estate is a party."); *see also* Douglas G. Baird, *Blue Collar Constitutional Law*, 86 Am. Bankr. L.J. 3, 4 n. 4 (2012) ("This [Pacor] test, however, was not formed with this type of case [(dischargeability)] in mind, and one can reasonably conclude that 'related to' jurisdiction

should include resolving rights between the creditor and the debtor, even if they do not deal with the bankruptcy estate proper.").

12. This Court questions whether the existence of distributable assets and the filing of a proof of claim against the estate have an effect on jurisdiction and authority over the underlying state law claims asserted in a dischargeability action. While the Court certainly would have jurisdiction and authority to determine these state law claims vis-a-vis the estate in the claim allowance process, the trustee (and therefore the estate) is not a party to the dischargeability action, and therefore might not be bound by its outcome. *See Hawaii v. Parsons (In re Parsons)*, 505 B.R. 540, 545 (Bank.D.Haw.2014) (order approving stipulation between the trustee and a creditor, allowing creditor's claim, does not have preclusive effect against the debtor in later dischargeability action, because the trustee is not in privity with the debtor); *Ackerman v. Schultz (In re Schultz)*, 250 B.R. 22, 29 (Bankr. E.D.N.Y.2000) (collateral estoppel held inapplicable to trustee's fraudulent conveyance action, because trustee had not been party to prior discharge/dischargeability action brought by creditor against debtor).

discharge, including the liquidation of any previously unliquidated debt, just like a state law based claim asserted against the federally created bankruptcy estate, is a proceeding at the "core" of the federal bankruptcy power that is "not based on any right expressly created by title 11, but nevertheless, [that] would have no existence outside of the bankruptcy," and therefore falls within this Court's subject matter jurisdiction as proceedings "arising in" a case under title 11.

### Liquidation of Underlying State Law Claims to be Excepted from Discharge is Part of the Bankruptcy Process and Does not Offend Constitutional Limitations

As observed by Judge Markell in his concurring opinion in *Deitz,* "it is beyond doubt that Congress has the power to provide for a discharge in bankruptcy." *Deitz,* 469 B.R. at 26 (Markell, J., concurring) (citing U.S. Const. art. 1, § 8, cl. 4, and *In re Klein,* 42 U.S. (1 How.) 277, 281, 11 L.Ed. 275 (1843) (Catron J., sitting as circuit justice; case reported in a note to *Nelson v. Carland,* 42 U.S. (1 How.) 265, 11 L.Ed. 126 (1843), for the proposition that the bankruptcy power extends from its smallest limit to distribute the property of the debtor to his creditors, to its greatest limit to discharge a debtor from his contracts and "all intermediate legislation")). Moreover, "[a]lthough Congress cannot 'withdraw from judicial cognizance any matter which, from its nature, is the subject of a suit at the common law or in equity, or admiralty,' " *id.* n. 2 (citing *Murray's Lessee v. Hoboken Land & Improvement Co.,* 59 U.S. (18 How.) 272, 284, 15 L.Ed. 372 (1856)), Congress may delegate the implementation of the discharge to non-Article III judges. *Id.* (citing, *inter alia, Hanover Nat'l Bank. v. Moyses,* 186 U.S. 181, 188, 22 S.Ct. 857, 46 L.Ed. 1113 (1902), for the proposition that "[t]he subject of 'bankruptcies' includes the power to discharge the debtor from his contracts

and legal liabilities, *as well as* to distribute his property" (emphasis added)).

As implicitly stated in the above quote from the Court in *Moyses,* the Court has consistently recognized that the equitable power of the bankruptcy courts extends to two principle aspects of bankruptcy relief: "(1) the discharge, under some circumstances, of an honest debtor from legal liability for debts he could not pay; *and* (2) an early pro *rata* distribution, according to equity, of his available assets among his several creditors." *Wiswall v. Campbell,* 93 U.S. 347, 350, 23 L.Ed. 923 (1876) (emphasis added) (concluding that the bankruptcy power includes the non-Article III authority to adjudicate state-law based claims against the estate).

As set forth above, it is beyond purview that, even though a debtor's legal liabilities are based upon and arise out of non-bankruptcy state or federal law, Congress can entirely withdraw such claims as might otherwise be asserted against a debtor (as distinct from claims asserted against a bankruptcy estate) from judicial cognizance in the form of providing a bankruptcy discharge to the debtor/obligor. In fact, Congress may withdraw claims from judicial cognizance even where such claims are based upon fraud, as it previously provided under Chapter 13 pre-BAPCPA. *See* An Act to Establish a Uniform Law on the Subject of Bankruptcies, Pub.L. No. 95–598, 92 Stat. 2549 (1978), amended, *inter alia,* by Pub.L. No. 101–647 (1990) (current version at 11 U.S.C. § 1328). Even post-BAPCPA, and even if the debtor is not simply "honest but unfortunate" and a creditor's claims consist of the types of claims asserted in this case, if a timely request for adjudication of these claims is not commenced in this Court, the bankruptcy discharge entered by this Court will entirely remove these claims from judicial cognizance by discharging

the debtor from any personal liability for the claims. *See* 11 U.S.C. § 523(c)(1); Fed. R. Bankr.P. 4007(c).

Therefore, by providing a bankruptcy discharge, legitimate Congressional authority has fully and completely removed from judicial cognizance myriad non-bankruptcy based and otherwise private right claims. Moreover, as implied by the Court in *Wiswall* when it stated that the bankruptcy power includes the discharge of legal obligations *"under some circumstances,"* 93 U.S. at 350 (emphasis added), the bankruptcy power includes the determination of the circumstances under which a discharge might be limited. Since it is beyond question that Congress is empowered to entirely remove these types of claims from judicial cognizance by granting a bankruptcy discharge, it certainly would be incongruous to conclude that Congress cannot delegate the determination of specific claims that will be excepted from the discharge to a non-Article III court.

In any event, such a counter-intuitive and illogical conclusion is unnecessary. The Supreme Court has recognized that the bankruptcy discharge involves the "restructuring of the debtor-creditor relations ... [and] is at the core of the federal bankruptcy power." *N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 71, 102 S.Ct. 2858, 2871, 73 L.Ed.2d 598 (1982). In *Northern Pipeline,* the plurality of the Court contrasted the bankruptcy discharge to the right to recover contract damages to augment the estate, the latter of which "is a private right, that is, of the liability of one individual to another under the law as defined." *Id.* However, this statement should not be read to affect the conclusion that the nature and extent of the discharge, including the determination of any debts that will be excepted from discharge, is well within the bankruptcy power—even when those debts

are based upon non-bankruptcy law. Certainly it cannot be concluded from this statement that any determination of the liability of one individual to another based upon "the law as defined" is removed from determination under the bankruptcy power. If that were so, the bankruptcy courts could not determine state law based claims against the estate, a power which the Court clearly has held is within the equitable bankruptcy power. *See Wiswall,* 93 U.S. at 350.

Rather, the proper distinction lies in whether the determination of a non-bankruptcy claim or issue necessarily arises in a proceeding lying at the "core" of the bankruptcy power. As observed by the Court in *Wiswall,* the bankruptcy power has two aspects: (1) the extent of the discharge; and (2) the distribution of the assets of the estate. *Id.* The determination of the nature and extent claims for the purpose of the discharge is no less central to the bankruptcy process than the determination of the nature and extent of claims for the purpose of the *pro rata* distribution of assets to creditors. In fact, it could easily be argued that the former is vastly more important and central to the process than the latter. The debtor is the central figure in the process, and the bankruptcy discharge has been appropriately characterized as the *"sin qua non"* of bankruptcy relief. *See Franklin Computer Corp. v. Apple Computer, Inc. (In re Franklin Computer Corp.),* 60 B.R. 795, 801 (Bankr. E.D.Penn.1986) ("creditors' dischargeable claims are extinguished even though they may arise through, or as, state created rights"); *see also Valley Historic Ltd. Partnership v. Bank of New York,* 486 F.3d 831, 836 (4th Cir.2007) ("the very purpose of bankruptcy is to discharge or restructure the debt that has caused the bankruptcy"); *State of California v. Harleston (In re Harleston),* 275 B.R. 546, 552 (9th Cir. BAP 2002) ("Discharge is no

less integral to [the bankruptcy] process than claim adjudication. . . ."). If the central purpose of bankruptcy relief were to distribute assets to creditors, rather than to afford relief to the debtor, there would be no need for no-asset Chapter 7 bankruptcy cases such as this one.

■ The Court in *Stern* recognized that the bankruptcy power afforded to non-Article III courts does not exclusively lie in the process of claims determination. According to *Stern*, in order for a non-Article III court to enter a final judgment constitutionally, the action must *either* "stem[ ] from the bankruptcy itself or . . . necessarily be resolved in the claims allowance process." *Stern*, 131 S.Ct. at 2618; *see also Yellow Sign, Inc. v. Freeway Foods, Inc. (In re Freeway Foods of Greensboro, Inc.)*, 466 B.R. 750, 768 (Bankr.M.D.N.C.2012) ("If either prong of the test is met, then the bankruptcy court

has constitutional authority to enter a final order."). Where a final ruling is a "central part of the 'restructuring of the debtor-creditor relationship,' " no Article III powers are exercised. *Bakst v. Smokemist, Inc. (In re Gladstone)*, 513 B.R. 149, 158 (Bankr.S.D.Fla.2014) (citing *Stern*, 131 S.Ct. at 2617); *see also Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 56 n. 11, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989).[13]

■ As set forth above, the vast majority of other courts similarly have concluded that the bankruptcy courts retain jurisdiction to liquidate claims as part of the dischargeability proceeding. In *Farooqi v. Carroll (In re Carroll)*, 464 B.R. 293, 311 (Bankr.N.D.Tex.2011), *aff'd*, 486 B.R. 718 (N.D.Tex.2013), the court addressed the issue of whether it had the constitutional authority to enter a final, monetary judgment against a debtor for fraudulent inducement, fraud, and violations of state

**13.** The liquidation of a non-bankruptcy law claim in the context of a dischargeability proceeding is practically and constitutionally indistinguishable from the liquidation of a non-bankruptcy law claim against the estate. Both of these claims are based solely upon non-bankruptcy law as ordinarily private rights. The Supreme Court has long recognized the authority of the non-Article III bankruptcy courts to determine these ordinarily private rights in the context of claim allowance and has expressly continued that recognition in *Stern*. *See Wiswall*, 93 U.S. at 350; *Stern*, 131 S.Ct. at 2618 (the bankruptcy courts may finally decide matters necessarily determined in the claims allowance process). Some courts indicate that the fact that the non-bankruptcy claim is against the debtor, rather than the estate is jurisdictionally (and potentially constitutionally) significant. *See Morrison*, 555 F.3d at 479 (money judgment on the debt is not "core" and is not clearly "related to" because it "requires the debtor to pay a single debt outside of, apart from, and even after the completion of the bankruptcy"). It is true that a dischargeability judgment carries with it consequences beyond the mere determination of dischargeability in the bankruptcy case. However, as set forth above, if a

bankruptcy court determines all issues necessary for determination of an ordinarily plenary suit in the context of a determination of a matter within its authority, requiring a further plenary suit would be a "meaningless gesture," and the bankruptcy court can afford affirmative relief thereon. *See supra*, n. 6. More fundamentally with respect to this Court's constitutional authority, the allowance and disallowance of claims in the bankruptcy case can and does have equal application outside of the bankruptcy. *See Katchen v. Landy*, 382 U.S. 323, 334, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966) (observing that once a bankruptcy court has dealt with an issue and nothing remains for a plenary suit, the normal rules of res judicata and collateral estoppel apply to decisions of the bankruptcy courts; more specifically, a creditor who offers his claim and demands its allowance is bound by what is "judicially" determined, and cannot relitigate the claim in another proceeding). Therefore, the fact that the liquidation and determination of a non-dischargeable claim has application after and outside of the bankruptcy is not a legitimate distinction with respect to the constitutionality of that determination.

fair trade and practices provisions. *Id.* at 308. The debtor argued that the court lacked subject matter jurisdiction to hear and finally determine the debtor's counterclaim in light of *Stern.* The court determined that *Stern* did not hold, "directly or indirectly, that an Article I tribunal is without the Constitutional authority to liquidate a creditor's claim against a debtor through entry of a final dollar judgment and then determine whether that judgment is dischargeable in the debtor's bankruptcy case." *Id.* at 313. The *Stern* decision does not impact this Court's constitutional authority to hear Plaintiffs' claims because, unlike Stern, Plaintiffs' action is at heart seeking relief from the bankruptcy power discharging its alleged claim, and a complete determination of this relief will result in the liquidation of the underlying claims. Accordingly, *Stern* does not prevent this Court from liquidating Plaintiffs' claims. *Id.* at 313; *see also Dragisic v. Boricich (In re Boricich)*, 464 B.R. 335, 337 (Bankr.N.D.Ill.2011) ("*Stern* left intact the authority of a bankruptcy judge to fully adjudge a creditor's claim. In this case, the claim was an adversary proceeding against debtor to bar dischargeability of a debt due to Plaintiff. Therefore, the authority to enter a final dollar judgment as part of the adjudication of non-dischargeability ... was not impaired by *Stern.*"). For these reasons, the Court concludes that it has both subject matter jurisdiction and constitutional authority to liquidate the Plaintiffs' claims in this dischargeability action.

### Statutory Authority

The Court next considers whether it has the statutory authority to hear and determine the amount and extent of any claims in the context of a dischargeability action where those claims have not previously been liquidated by a court of competent jurisdiction. The Court clearly has statutory authority to do so. Pursuant to 28 U.S.C. § 157(a), the district courts have the authority to refer cases over which the district court has original subject matter jurisdiction under Section 1334 to the bankruptcy judges for their respective districts. The United States District Court for the Middle District of North Carolina has established a local rule of standing reference of all such matters to this Court. *See* Local Rule 83.11 for the United States District Court for the Middle District of North Carolina.

Section 157 further divides matters falling within the subject matter jurisdiction of the bankruptcy courts into core matters, which matters this Court may statutorily "hear and determine" pursuant to Section 157(b), and non-core matters, with respect to which this Court may issue proposed findings of fact and conclusions of law unless the parties consent to a final judgment being entered by the Court pursuant to Section 157(c). The bankruptcy courts' power to enter final orders and judgments extends to "all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11." 28 U.S.C. § 157(b)(1). If a proceeding is non-core, the bankruptcy court may hear the proceeding but must have consent of the parties in order to enter final orders and judgments. 28 U.S.C. § 157(c)(2). If the parties do not consent, the court may still hear the proceeding but must submit proposed findings of fact and conclusions of law to the district court. 28 U.S.C. § 157(c). 28 U.S.C. § 157(b)(1) authorizes this Court to "hear and determine ... all core proceedings ..., and may enter appropriate orders and judgments...." 28 U.S.C. § 157(b) lists what types of proceedings come within this Court's statutory "core" power. This section was intended to extend the authority of the bankruptcy court to the furthest extent of its constitutional author-

ity. *In re Ben Cooper, Inc.*, 896 F.2d 1394, 1398 (2d Cir.1990), *vacated sub nom. Ins. Co. of State of Pa. v. Ben Cooper, Inc.*, 498 U.S. 964, 111 S.Ct. 425, 112 L.Ed.2d 408 (1990) and *opinion reinstated*, 924 F.2d 36 (2d Cir.1991) (examining legislative history and determining "bankruptcy jurisdiction was to be construed as broadly as possible within the constitutional constraints of *Marathon*," *N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982)).

Both parties, as they must, agree that Plaintiffs' discharge and dischargeability causes of action are core proceedings. Such actions do not stand independent of a bankruptcy filing, and are specifically listed as statutorily core matters that this Court may hear and determine pursuant to 28 U.S.C. § 157(b)(2)(I) and (J). As matters that are specifically listed as core, this Court has statutory authority to enter a final judgment with respect to the dischargeability claims. *Stern*, 131 S.Ct. at 2604–05. For the reasons set forth above, the act of liquidating the underlying claims that Plaintiffs seek to have declared non-dischargeable is integral to determination of the dischargeability question itself, *see, e.g., Van–Voegler v. Myrtle (In re Myrtle)*, 500 B.R. 441, 446 (Bankr.W.D.Va.2013) (and cases cited therein), and, entering a judgment liquidating the non-dischargeable claims is statutorily "core" under 28 U.S.C. § 157. This Court has statutory authority to hear and determine the amount and extent of any claims asserted to be non-dischargeable.

### *Permissive Abstention*

 Plaintiffs argue in the alternative that, even where this Court may hear the case and enter a final judgment, the Court should not exercise that power. The Court has construed this request as a request that the Court permissively abstain from liquidating the claims in this case. When determining whether permissive abstention is appropriate,

[t]he factors that a court should consider are: (1) efficiency in the administration of the debtor's estate; (2) the extent to which state law issues predominate over bankruptcy issues; (3) whether the issues involve difficult or unsettled issues of state law; (4) the presence of a related proceeding commenced in state court; (5) the existence of a jurisdictional basis other than 28 U.S.C. § 1334; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the substance rather than form of an asserted "core" proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state courts; (9) the burden of the bankruptcy court's docket; (10) the likelihood that the commencement of the proceedings in bankruptcy court involved forum shopping by one of the parties; (11) the existence of a right to a jury trial; (12) whether non-debtor parties are involved in the proceeding.

*Walter v. Freeway Foods, Inc. (In re Freeway Foods of Greensboro, Inc.)*, 449 B.R. 860, 879–80 (Bankr.M.D.N.C.2011). Plaintiffs provide four arguments in support of a request to exercise permissive abstention: (1) claims against co-conspirators of the debtors are "likely to be pursued in state court litigation;" (2) Plaintiffs will seek to impose a constructive trust against payments made to attorneys during state court litigation, and that remedy is more appropriately applied in the court where the attorneys made appearances; (3) liquidation of claims is insufficient remedy for all claims the Plaintiffs have against the Debtor, and a state court can more adequately handle equitable remedies; and (4) Plaintiffs have a right to a jury trial under the Seventh Amendment. [Plaintiffs' Reply, at 2].

■ This Court finds the Plaintiffs' arguments unpersuasive. Because the Plaintiffs must necessarily present all the evidence sufficient to liquidate the underlying claims in the context of this Court's dischargeability determination, an issue over which this Court has exclusive jurisdiction, the Plaintiffs' request to have a second trial in state court over the amount of damages would be less economical, rather than moreso. If Plaintiffs elect to pursue alleged claims against other non-debtor entities, those claims must be brought outside of this Court regardless of the non-dischargeability claims, and so issuing a final judgment on Plaintiffs' dischargeability claims over which this Court has exclusive jurisdiction is no more burdensome and does not adversely affect judicial economy. In fact, most courts, in concluding that the bankruptcy court has authority to liquidate non-dischargeable debts, base their conclusion at least in part on the fact that the bankruptcy court is the most efficient forum in which to resolve these overlapping issues. As observed by the United States Bankruptcy Court for the Southern District of Florida:

> The reasons usually given [why circuit courts have held that bankruptcy courts have jurisdiction to liquidate debts and enter monetary judgments in a dischargeability action] include: 1) determination of the debt lies within the equitable jurisdiction of the bankruptcy court; 2) the debtor by filing bankruptcy has consented to jurisdiction of the bankruptcy court over matters necessary to the determination of adversarial [sic] proceedings; and 3) judicial economy and efficiency require that the bankruptcy court be empowered to settle both the dischargeability of the debt and the amount of the monetary judgment.

*In re Neves,* 500 B.R. 651, 659 (Bankr. S.D.Fla.2013). Similarly, the constructive trusts and other equitable remedies that the Plaintiffs seek can be brought against other parties outside of the bankruptcy proceeding. No factor listed above weighs sufficiently in favor of permissive abstention for this Court to abdicate its responsibility to adjudicate the matters brought before it for which it has the authority to hear and determine. *See In re Repurchase Corp.,* 329 B.R. 832, 835 (Bankr. N.D.Ill.2005) ("[A] decision to abstain must be weighed against a court's obligation to exercise the jurisdiction bestowed by Congress." (citing *Colorado River Conservation Dist. v. United States,* 424 U.S. 800, 813, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976))). "The doctrine of abstention is an 'extraordinary and narrow exception' to a federal court's strict duty to adjudicate a controversy properly before it and it 'may be invoked only in those 'exceptional circumstances' in which surrendering jurisdiction 'would clearly serve an important countervailing interest.' " *Id.* (citing *Int'l Coll. of Surgeons v. Chicago,* 153 F.3d 356, 360 (7th Cir.1998)). In this case, there are no such clear countervailing interests. Judicial economy concerns do not weigh against this Court issuing a final judgment in this case; any underlying state law issues are not so complicated as to be burdensome; and there are no other parties involved in the proceeding before the Court, nor are such parties necessary to fully adjudicate the issues presented by the pleadings in this case.

Even if Plaintiffs' arguments concerning judicial economy were more persuasive, the Court would not grant the request for permissive abstention. Here, an order that attempted to categorically except a putative debt from discharge without having determined the existence or amount of the debt would be an abdication of this Court's duty to determine dischargeability. As explained above, liquidation of any claims will be resolved in a determination of the dischargeability action. Were the Court to do as Plaintiffs ask and merely

state that one particular (and potentially broad and uncertain) category of debt is excepted from the Debtor's discharge, the Court would in effect be leaving the determination of dischargeability entirely to the state court. That result is impractical and improper where the bankruptcy court has the statutory duty (and exclusive jurisdiction) to make this determination.

### There is no Right to a Jury Trial

■ Here, the Plaintiffs also have demanded a jury trial and have not consented to a jury trial before this Court. The Plaintiffs' claims are being determined and liquidated in the context of a non-dischargeability action. Such an action lies within the equitable powers of this Court, and Plaintiffs have no right to a jury trial with respect to the claims in this case. *Varney v. Varney (In re Varney)*, No. 94–2045, 1996 WL 138684, at *2 (4th Cir. Mar. 28, 1996); *Charlotte Commercial Grp., Inc. v. Fleet Nat'l Bank (In re Charlotte Commercial Grp., Inc.)*, 288 B.R. 715, 718 (Bankr.M.D.N.C.2003) ("[A] dischargeability proceeding is an equitable claim for which a party cannot obtain a jury trial pursuant to *Granfinanciera*."); *M C Contractors, Inc. v. Fink (In re Fink)*, 294 B.R. 657, 659 (W.D.N.C.2003) (same).

### CONCLUSION

For the foregoing reasons, the Court finds that it has subject matter jurisdiction, statutory authority, and constitutional authority to hear and determine Plaintiffs' non-dischargeability claim, liquidate the claims, and enter final judgment. Furthermore, the Plaintiffs have no right to a jury trial in this case. Therefore, the Plaintiffs' request to dismiss, or alternatively, to permissively abstain from hearing and determining the Defendant's counterclaim for liquidation of any claims

determined to be non-dischargeable is DENIED.

**SO ORDERED.**